GROUP HEALTH PLAN, INC., et al., Plaintiffs,

Medica, a subsidiary of Allina Health System, Plaintiff,

v.

PHILIP MORRIS INCORPORATED, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, British–American Tobacco Company Limited, et al., Lorillard Tobacco Company, Liggett Group, Inc., United States Tobacco Company, Hill & Knowlton, Inc., The Council for Tobacco Research—U.S.A., Inc., The Tobacco Institute, Inc., Smokeless Tobacco Council, Inc., Defendants.

No. C6–00–377.

Supreme Court of Minnesota.

Jan. 11, 2001.

**4**

Lawrence T. Hofmann, Richard M. Hagstrom, Michell K. Enright, Tricia M. Whitehill, Zelle, Hofmann, Voelbel & Gette, L.L.P., Minneapolis, for Plaintiffs Group Health Plan, Inc., and HealthPartners, Inc.

Lewis A. Remele, Jr., Charles E. Lundberg, Gregory P. Bulinski, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Plaintiff Medica.

Peter W. Sipkins, Dorsey & Whitney, L.L.P., Minneapolis, for Defendants.

## OPINION

PAGE, Justice.

Before the court are two consolidated federal court actions by appellants, three nonprofit Minnesota health maintenance organizations, Group Health Plan, Inc., HealthPartners, Inc., and Medica (collectively "the HMOs"), against several cigarette manufacturers and affiliated organizations, respondents Philip Morris Incorporated, et al.[1] (collectively "the tobacco companies"). The HMOs seek to recover costs for increased health care services they provided to their members as a result of tobacco-related illnesses. The United States District Court for the District of Minnesota certified two questions to this court. First, must a private plaintiff be a purchaser of the defendant's products in order to properly plead a claim under Minnesota's misrepresentation in sales statutes, Minn. Stat. §§ 325F.67, 325F.69, subd. 1, 325D.13 (2000), and Minn.Stat. § 8.31, subd. 3a (2000)? Second, must a private plaintiff plead and prove reliance on the defendant's statements or conduct in order to be eligible for relief in the form of damages under the aforementioned statutes?

Based on the broad language of the four statutes and the legislative intent that the statutes create remedies broader than those available in an action for common law fraud, we conclude that the HMOs are not required to be purchasers of the defendants' products in order to properly plead a claim under these statutes. For the same reasons, we conclude that it is not necessary for plaintiffs to plead reliance by individual purchasers of defendants' products in order to properly plead a claim under these statutes. It will be necessary, however, for plaintiffs to prove a causal nexus between the conduct alleged to violate Minn.Stat. §§ 325F.67, 325F.69, subd. 1, and 325D.13 and the damages claimed.

The HMOs brought these actions against the tobacco companies seeking to recover costs of increased health-care services incurred as a result of their members' tobacco-related illnesses. The HMOs contend that they were directly and indirectly injured by the tobacco companies' conspiracy to mislead the public and the health-care industry regarding the effects of tobacco use. They allege that they were directly injured by the tobacco companies' deceptive statements urging them not to engage in tobacco education programs that could have prevented or decreased the occurrence of tobacco-related illnesses among their members. The HMOs allege that they were indirectly injured by the tobacco companies' deceptive conduct because of the costs for increased

1. The respondents are: Philip Morris Incorporated, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, British–American Tobacco Company Limited, Lorillard Tobacco Company, Liggett Group, Inc., Hill & Knowlton, Inc., The Council for Tobacco Research—U.S.A., Inc., and The Tobacco Institute. United States Tobacco Company and the Smokeless Tobacco Council, Inc., were dismissed from the suit by stipulated order of the Federal District Court.

medical services incurred by their members that the HMOs were contractually obligated to assume.

The HMOs' first amended complaint asserted nine counts, alleging violations of Minnesota's antitrust statutes and Minnesota's statutes prohibiting misrepresentation in sales, as well as conspiracy, breach of a special duty, and unjust enrichment. The federal district court dismissed the statutory misrepresentation in sales counts without prejudice for failure to plead the necessary elements of the claim. The breach of a special-duty claim was dismissed with prejudice.

Second amended complaints were filed re-alleging violations of the antitrust statutes and the misrepresentation in sales statutes, conspiracy, unjust enrichment, and two new counts under the federal Racketeer Influenced and Corrupt Organizations Act (RICO). The tobacco companies moved to dismiss the misrepresentation in sales, unjust enrichment, and RICO counts under Fed.R.Civ.P. 12(b)(6) for failure to state claims upon which relief could be granted, and under Fed.R.Civ.P. 12(b)(7) and 19 for failure to join necessary parties. The HMOs moved to certify to this court the question of whether they can properly plead a claim under Minnesota's misrepresentation in sales statutes when they are not purchasers of the tobacco companies' products.

The federal district court dismissed the HMOs' unjust-enrichment claim with prejudice because the HMOs have an adequate remedy at law in the form of a subrogation action and because their members did not possess the necessary indicia of membership to qualify the HMOs for associational standing. The court dismissed the HMOs' RICO claims with prejudice because their RICO theory was highly speculative and their injuries were derivative and too remote to satisfy the requirements for a RICO claim. The court granted the motion to certify the "purchaser" question to this court and added an additional question about the need to plead and prove reliance.

The court reserved judgment on the motion to dismiss the misrepresentation in sales counts until this court responds to the certified questions.

The certification order presents the following two questions, which we have modified slightly pursuant to our authority under Minn.Stat. § 480.065, subd. 4 (2000):(1) must plaintiffs be purchasers of defendants' products in order to properly plead a claim under Minn.Stat. §§ 325F.67, 325F.69, subd. 1, 325D.13, and 8.31, subd. 3a; and (2) must these private plaintiffs plead and prove individual purchaser reliance on the defendants' statements or conduct in order to be eligible for relief in the form of damages under Minn.Stat. §§ 325F.67, 325F.69, subd. 1, 325D.13, and 8.31, subd. 3a?

I.

■ The certified questions call upon us to determine the scope of statutory claims for relief under the specified Minnesota statutes, first, as to who may bring a claim and, second, as to the nature of the pleading and proof that is necessary to such a claim. Because the claims at issue are creations of statute, our function, as in all statutory interpretation, is to discern as best we can the legislative intent. *See* Minn.Stat. § 645.16 (2000); *Current Technology Concepts, Inc. v. Irie Enters., Inc.,* 530 N.W.2d 539, 543 (Minn.1995). Our starting point is the language of the statutes in question. *See, e.g., State v. Gorman,* 546 N.W.2d 5, 8 (Minn.1996).

Three substantive statutes define the prohibited conduct, Minn.Stat. §§ 325F.67, 325F.69, subd. 1, and 325D.13. Section 325F.67 provides:

Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise * * * makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this

state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise * * * which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

The duty of a strict observance and enforcement of this law and prosecution for any violation thereof is hereby expressly imposed upon the attorney general, and it shall be the duty of the county attorney of any county wherein a violation of this section shall have occurred, upon complaint being made, to prosecute any person violating any of the provisions of this section.

Section 325F.69, subdivision 1, provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

The third substantive statute, section 325D.13, states: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

The fourth statute at issue provides remedies that may be pursued by private parties for violation of these substantive statutes. This remedial statute is Minn. Stat. § 8.31, subd. 3a (2000). Section 8.31 provides the attorney general authority to investigate and enforce the statutes designated in subdivision 1 that regulate "unfair, discriminatory, and other unlawful practices in business, commerce, or trade," including the statutes at issue here. Minn. Stat. § 8.31, subd. 1. Subdivision 3a of section 8.31 creates private remedies for violations of the statutes enumerated in subdivision 1:

In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality. In any action brought by the attorney general pursuant to this section, the court may award any of the remedies allowable under this subdivision.

## II.

We first address the question of whether the plaintiffs must be purchasers of the defendants' products in order to properly plead a claim under section 8.31, subdivision 3a, for alleged violations of the misrepresentation in sales statutes.

The HMOs contend that this issue was resolved in *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490 (Minn.1996) (*Humphrey*), where we held that Blue Cross Blue Shield of Minnesota (Blue Cross), a nonprofit health care organization similar in many respects to the HMOs, had standing to bring substantially identical claims against the tobacco companies under the same statutes, even though there was no allegation that Blue Cross was a purchaser of the defendants' products. The HMOs argue that stare decisis requires a result here similar to the one reached in *Humphrey*. Beyond relying on *Humphrey*, the HMOs assert that Minn. Stat. § 8.31, subd. 3a broadly authorizes "any person" who has been injured by a

violation of the misrepresentation in sales statutes to bring an action for damages without any requirement that the plaintiff be a purchaser.

The tobacco companies counter that, although *Humphrey* addressed standing, the specific issue presented here was neither argued nor decided in that case, and therefore *Humphrey* does not control the result in this case. They contend that the statutes at issue are consumer protection statutes and the remedies are therefore intended only for consumers—that is, purchasers and users of the product that is the subject of the alleged misrepresentation.

Because it could foreclose the need to address additional arguments, we turn initially to the HMOs' contention that *Humphrey* has already answered the first certified question, or at least controls the result. There is no dispute that the legal claims brought under the misrepresentation in sales statutes by the HMOs are the same as those alleged by Blue Cross. Further, the tobacco companies acknowledged at oral argument that, for the purposes of these certified questions, the HMOs are identical to Blue Cross.

In *Humphrey*, among other claims, Blue Cross alleged that the tobacco companies violated the following statutes: Unfair Discrimination and Competition, Minn.Stat. §§ 325D.03–.08, 325D.69 (1994); Unlawful Trade Practices, Minn.Stat. §§ 325D.09–.16 (2000); False Statement in Advertisement, Minn.Stat. § 325F.67 (2000); and Deceptive Trade Practices, Minn.Stat. §§ 325D.43–.48 (2000). 551 N.W.2d at 496. Blue Cross sought damages for the increased cost of health care incurred as a result of the illegal actions of the defendants. The issue in *Humphrey* that is relevant here was whether Blue Cross could state a private claim for damages under section 8.31, subdivision 3a, for violations of the substantive statutes.

The tobacco companies made essentially two arguments in *Humphrey*. First, they argued that Blue Cross could not assert a direct claim against the defendants because Blue Cross was not directly injured by the conduct of the defendants. *See id.* at 494–95. Rather, Blue Cross' damages were indirect—increased health-care costs arising from tobacco-related illnesses suffered by its subscribers as a result of alleged deception by the defendants. The tobacco companies contended that Blue Cross' injury was too remote from the alleged misconduct and it could therefore only assert a subrogation claim. *See id.* The second argument raised by the tobacco companies was that Blue Cross suffered no injury because it passed through any increased costs to its subscribers and, without injury, Blue Cross had no standing to bring its claims. *See id.* at 492.

In addressing Blue Cross' tort claims, we held that the injury to Blue Cross was too remote from the alleged misconduct for it to assert a direct claim, and neither its unusual status as something more than a typical health insurer nor its claim that the tobacco companies assumed a "special duty" could overcome this barrier to standing. *See id.* at 495.

In addressing the statutory claims raised by Blue Cross, we pointed out the breadth of the legislative grants of standing for antitrust, consumer protection, and deceptive trade practices claims. *See id.* at 496. We explained that, "[i]n the face of these plain statutory grants of standing, the tobacco companies look to what is commonly called the 'pass through defense.'" *Id.* We noted that the pass-through defense was abolished by the legislature with the broad grants of standing conferred in the statutes at issue and held that Blue Cross therefore had standing to sue under the misrepresentation in sales statutes and the antitrust statute. *See id.*

The HMOs argue that, because it was apparent that Blue Cross was not a purchaser of the defendants' goods in *Humphrey*, implicit in our ruling that Blue Cross had standing for its statutory claims is a determination that status as a pur-

chaser of the goods is not necessary to state a claim under those statutes. The tobacco companies argue that the issue of purchaser status was neither argued nor decided in *Humphrey*.[2]

Although our statements in *Humphrey* about Blue Cross' standing to bring its statutory claims are broad, it is clear from the briefs in that case that the precise issue presented here was not expressly raised in *Humphrey*. Moreover, although that issue is arguably subsumed in the argument about direct versus remote injury, we did not address the issue in our opinion. In the absence of any indication that the issue presented here was raised, considered, and addressed in *Humphrey*, we decline to rely on stare decisis for resolution of this important issue, and we must analyze the issue on its merits.

Since the claims at issue are based on statute, we look to the language of the statutes to answer the question whether the plaintiffs must be purchasers to state a claim. Minnesota Statutes §§ 325F.67, 325F.69, subdivision 1, and 325D.13, define the conduct that constitutes a violation of law; they say nothing about who may bring a private action for damages resulting from a violation.[3] As we recognized in *Humphrey*, it is Minn.Stat. § 8.31, subd. 3a, that authorizes private actions for violation of these substantive statutes. In describing who may bring an action, subdivision 3a does so in the broadest terms, stating that *"any person* injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages." *Id.* (emphasis added).

Neither the private remedies statute nor the substantive statutes contains any language restricting those who may sue to purchasers or consumers.[4]

Thus, the plain and unambiguous language of the governing statute allows "any person" to bring a private action for redress of violations of the misrepresentation in sales statutes. Specifically, Minn.Stat. § 8.31, subd.3a, does not limit potential plaintiffs to purchasers of the defendant's goods.

The tobacco companies urge us to read a limitation into the broad language of the private remedies statute and restrict the "any person" language to those who the substantive statutes were designed to protect—that is, purchasers and users of the defendant's goods. They assert that the broad language used in subdivision 3a does not evince an intent actually to allow "any person" to bring an action to enforce the misrepresentation in sales statutes, but rather was necessary because the private remedies statute addresses a broader array of substantive statutes, not all of which are limited to *consumer* protection.

The tobacco companies argue that, in *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1 (Minn.1992), *overruled in part by Ly v. Nystrom*, 615 N.W.2d 302, 314 n. 25 (2000), this court implicitly acknowledged that the universe of those who may bring an action under subdivision 3a to enforce the misrepresentation in sales laws is limited to those intended to be protected by the substantive laws. They derive this implicit limi-

**2.** Interestingly, the parties have reversed the positions taken regarding the scope of what was decided in *Humphrey*. Although the plaintiffs here argue for broad impact of that decision, in *Humphrey* the plaintiff Blue Cross asserted that the tobacco companies' argument that the plaintiffs' injury was too remote did not extend to the statutory claims. Similarly, although the tobacco companies now argue that the ruling in *Humphrey* was narrow, in that case they argued that their "too remote" argument applied to all of the plaintiffs' claims.

**3.** The only exception is in section 325F.67, which imposes a duty to enforce on the attorney general and county attorney.

**4.** In addition to section 8.31, subdivision 3a, Minn.Stat. § 325D.15 (2000) also authorizes "any person" to sue for damages for violation of section 325D.13. Section 325D.15 provides: "Any person damaged * * * by reason of a violation of [section 325D.13] shall be entitled to sue for * * * the amount of the actual damages, if any."

tation from the court's discussion of the argument made by the defendants in *WatPro* that private actions under subdivision 3a are limited to individual consumers, excluding sophisticated purchasers like the plaintiff church. As support for their conclusion that private actions are available only to consumers, or those whom the statutes are intended to protect, the tobacco companies rely on the court's framing of the issue in *WatPro* as whether the Consumer Fraud Act, Minn. Stat. § 325F.69 (the substantive statute), extends to all consumers and its analysis of whether commercial consumers are excluded. But it does not appear that in *WatPro* any argument was made or addressed by this court that nonconsumers as a class are not covered by the "any person" language of subdivision 3a. Just as we are disinclined to reach a conclusion about the resolution of this issue from *Humphrey*, where the precise issue was not raised but arguably is implicit in our holding, we are even less inclined to rely on a conclusion that is said to be implicit not in the holding, but merely in the nature of our discussion in *WatPro*.[5]

The tobacco companies argue that the limiting construction they proffer is further supported by the concurring and dissenting opinion of Justice Simonett in *WatPro*. Referring to section 8.31, subdivision 3a, Justice Simonett wrote: "Read literally, 'any person' means just that. But read in context, having in mind the purpose of the statute, 'any person' means any consumer and excludes 'merchants.' The court's opinion properly so holds * * * ." *WatPro*, 491 N.W.2d at 9 (Simonett, J., concurring in part and dissenting in part).

We are not persuaded that Justice Simonett's concurrence/dissent warrants the conclusion the tobacco companies would have us reach. First, we note that, rather than holding that merchants are not in-

cluded in "any person," the majority only concluded that the plaintiff church was not a "merchant" as defined in the U.C.C., and therefore did not decide whether the U.C.C. provides the exclusive remedy for a claim by a merchant to the exclusion of the Consumer Fraud Act. *See WatPro*, 491 N.W.2d at 7–8. Second, although Justice Simonett, joined by two other members of the court, stated his view that the phrase "any person" in subdivision 3a carries less than its broad literal meaning, it bears mention that the consumer versus nonconsumer issue argued here was not before the court in *WatPro*. Finally, and perhaps most significantly, we cannot overlook the oft-repeated rule of statutory interpretation that, "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2000); *see also State v. Gorman*, 546 N.W.2d 5, 8 (Minn.1996). In light of these factors, we are not inclined to adopt a limited meaning for the unambiguous phrase "any person" in subdivision 3a based on the suggested narrower context of an ancillary statute, section 325F.69.

Our unwillingness to limit the plain meaning conveyed by the language of subdivision 3a based on the presumed intent of the misrepresentation in sales statutes is fortified by the fact that the naturally broad interpretation of "any person" is consistent with the overall tenor of the statutes at issue to maximize the tools available to stop the prohibited conduct. Although, as discussed above, we do not find *Humphrey* dispositive, it is instructive as to the scope of the statutes. In particular, we explained that these statutes authorize "a private cause of action for any party injured directly *or indirectly* by a violation of the statute. These provisions reflect a clear legislative policy encourag-

---

5. In *WatPro*, our holding was that the transaction at issue was covered by the Consumer Fraud Act and was not precluded from coverage either because the plaintiff was a mer-

chant whose transactions were exclusively covered by the U.C.C. or because the Consumer Fraud Act protects only individual consumers. *See WatPro*, 491 N.W.2d at 8.

ing aggressive prosecution of statutory violations." *Humphrey*, 551 N.W.2d at 495 (emphasis added). We noted further that "[t]hese statutes are generally very broadly construed to enhance consumer protection." *Id.* at 496.

The legislative history of the private remedies statute also emphasizes this expansion of enforcement opportunities. In a Labor and Commerce Committee meeting, Senator Winston Borden, author of the bill that included section 8.31, subdivision 3a, stated that its purpose was to "allow the individual person to bring a civil action for the damages he sustained." Hearing on S.F. 819, S. Comm. Labor and Commerce, 68th Minn. Leg., March 8, 1973 (audiotape). Referring to false advertising and consumer fraud, Senator Borden noted that, "if a[n] individual could bring an action, he can do some of the prosecuting, he can do some of the enforcing, he can provide some of the protection for himself and others that the Attorney General's Office * * * can not do today." *Id.* Like the wording of the statute, the description of its goal is broad: to enable individuals injured by the prohibited conduct to sue for damages and in doing so complement the limited enforcement resources of the attorney general. There is no indication that this goal is restricted to purchasers, and it is apparent that it can be effectuated as well by enforcement actions brought by nonpurchasers.

Our adherence to the naturally broad meaning of the statutory authorization for any person to sue is also consistent with the reading other courts have given similarly broad statutes. For example, in *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 448 N.E.2d 357 (1983), the Supreme Judicial Court of Massachusetts addressed the reach of a consumer protection statute with similar language. The question was whether the plaintiffs in a medical malpractice action could bring a separate action against the insurer of the defendant medical provider under the Massachusetts consumer protection stat-

ute, Mass. Gen. Laws ch. 93A, § 9. The court held that the malpractice plaintiffs could sue the insurer under section 9 on the basis that the insurer's settlement practices violated a statute governing unfair or deceptive practices in the business of insurance. *See Van Dyke*, 448 N.E.2d at 360. The court pointed out that section 9 had been amended in 1979 to authorize suit by any person injured by violation of the specified substantive statutes. The statute as amended read:

> *[a]ny person,* other than a person entitled to bring action under [G.L. c. 93A, § 11], who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two * * * or *any person* whose rights are affected by another person violating the provisions of [G.L. c. 176D, § 3(9)] may bring an action * * *.

*Van Dyke*, 448 N.E.2d at 360 (quoting Mass. Stat.1979, c. 406, § 1, which amended Mass. Gen. Laws ch. 93A, § 9(1)) (emphasis added) (brackets in original). The court explained that the amended language broadened the statute to include anyone injured by the unlawful conduct:

> This 1979 amendment substantially broadened the class of persons who could maintain actions under G.L. c. 93A, § 9. The plaintiffs, therefore, are entitled to relief under G.L. c. 93A, § 9, if they were injured by any method, act, or practice of St. Paul that was unlawful under G.L. c. 93A, § 2, or if their rights were affected by St. Paul's violation of G.L. c. 176D, § 3(9).

*Id.* Since the victims of medical malpractice were allowed to sue the medical provider's insurer, the "any person" language in the Massachusetts statute was obviously not limited to purchasers of the defendant's goods or services. *See Sidney Binder, Inc. v. Jewelers Mut. Ins. Co., Inc.*, 28 Mass.App.Ct. 459, 552 N.E.2d 568, 572 (1990) (insurance company can sue under consumer fraud act for fraudulent representations by insured).

The United States Supreme Court has addressed similar broad language in the private remedies provision of the federal antitrust laws. Section 4 of the Clayton Act provides that *"[a]ny person* who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may sue for treble damages. 15 U.S.C. § 15 (1994) (emphasis added). The Court explained that this broad authorization to sue reflects congressional goals of expanded enforcement and deterrence parallel to those in Minnesota's misrepresentation in sales laws:

> [T]he lack of restrictive language reflects Congress' "expansive remedial purpose" in enacting § 4: Congress sought to create a private enforcement mechanism that would deter violators and deprive them of the fruits of their illegal actions, and would provide ample compensation to the victims of antitrust violations. As we have recognized, "[t]he statute does not confine its protection to consumers, or to purchasers, or to competitors, or to sellers * * * ."
>
> Consistent with the congressional purpose, we have refused to engraft artificial limitations on the § 4 remedy.

*Blue Shield of Virginia v. McCready,* 457 U.S. at 470, 472, 102 S.Ct. 2540 (1982) (citations and footnote omitted).[6]

We have held that it is not the role of this court to extend the reach of consumer protection beyond what was intended by the legislature. *See Boubelik v. Liberty State Bank,* 553 N.W.2d 393, 403 (Minn.1996). But neither is it our role to narrow the reach where the legislature has spoken in unequivocally broad terms. In Minn.Stat. § 8.31, subd. 3a, the legislature authorized "any person" injured by a violation of the misrepresentation in sales laws to bring an action for damages. We conclude that, as long as the plaintiff alleges an injury by conduct that violates one or more of the substantive statutes, it is not necessary under subdivision 3a to plead that it is a purchaser of the defendant's products. We therefore answer the first certified question in the negative. The HMOs need not be actual purchasers of the tobacco companies' products in order to properly plead claims under Minn.Stat. §§ 325F.67, 325F.69, subd. 1, 325D.13, and 8.31, subd. 3a.[7]

### III.

The second certified question is whether a plaintiff must plead and prove reliance on the defendant's alleged misrepresentations in order to recover damages under Minn.Stat. § 8.31, subd. 3a, for violation of Minn.Stat. §§ 325F.67, 325F.69, subd. 1, or 325D.13. Once again, we first look to the language of the statutes.

As described above, section 8.31, subdivision 3a, authorizes "any person injured by a violation of any of the laws referred to in subdivision 1[to] bring a civil action and recover damages * * * and receive other equitable relief as determined by the court." Subdivision 3a defines the remedies available and requires only that a plaintiff be injured by a violation of one of the substantive statutes to recover damages. We must then look to the substantive statutes to determine what constitutes a violation.

---

6. The Court then discussed two limitations on the section 4 remedy it has recognized in order to prevent unacceptable risk of duplicate recoveries. *See McCready,* 457 U.S. at 473–74, 102 S.Ct. 2540 (explaining that parens patriae and indirect purchaser actions are not permitted under section 4).

7. Although we decide that the HMOs' allegations are sufficient to state a claim under subdivision 3a and the enumerated substantive statutes even though they are not consumers of defendants' products, we do not hold that the scope of those enforcement statutes is entirely without limit. *Cf. Ly v. Nystrom,* 615 N.W.2d 302, 314 (Minn.2000) (holding that a private action under subdivision 3a to enforce the Consumer Fraud Act is only available if it will benefit the public). There may exist some nonconsumers whose injuries are too attenuated to permit recovery under the same statutes. But that case is not before us today.

Each of the misrepresentation in sales statutes at issue defines a violation primarily in terms of the conduct of the defendant that is prohibited. The limited references in the statutes to the victim/plaintiff indicate that reliance is not an element of a violation when seeking injunctive relief. Minnesota Statutes § 325F.69, subdivision 1, defines the conduct proscribed essentially as any misrepresentation made with the intent that others rely on it in connection with the sale of any merchandise. Significantly, that conduct is prohibited "whether or not any person has in fact been misled, deceived, or damaged thereby." *Id.* The person could not have relied on the misconduct if they were not misled or deceived. The defendant must intend that its conduct be relied on, but reliance by the victim is not necessary for the violation to occur. Minnesota Statutes § 325F.67 defines the prohibited conduct in terms of untrue or misleading statements in advertisements for the sale of merchandise. The statute goes on to provide that such conduct is a misdemeanor and a public nuisance "whether or not pecuniary or other specific damage to any person occurs as a direct result." *Id.* Finally, Minn.Stat. § 325D.13 prohibits any person from misrepresenting the quality, ingredients, or origin of merchandise in connection with the sale of merchandise. Neither section 325F.67 nor section 325D.13 mentions reliance as necessary for a violation.

The language of the statutes therefore establishes that, to state a claim that any of the substantive statutes has been violated, the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby. Allegations that the plaintiff relied on the defendant's conduct are not required to plead a violation. Allegations of reliance are therefore not necessary to state a claim under section 8.31, subdivision 3a, for damages resulting from a violation.

As we stated in *Humphrey*, "[t]he legislature may, by statute, expand the connec-tion between conduct and injury necessary to permit suit." 551 N.W.2d at 495. The legislature has done so in these misrepresentation in sales statutes. Specifically, elimination of reliance as a distinct element of a statutory misrepresentation claim is consistent with the legislature's intent to broaden the availability of redress.

> In passing consumer fraud statutes, the legislature clearly intended to make it easier to sue for consumer fraud than it had been to sue for fraud at common law. The legislature's intent is evidenced by the *elimination* of elements of common law fraud, such as proof of damages or reliance on misrepresentations.

*State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn.1993) (emphasis in original). Imposing a requirement to plead common law reliance in a statutory claim intended to alleviate the burdens of a common law fraud action would be contrary to the legislature's intent.

The tobacco companies argue that, to the extent the legislature eliminated elements of common law fraud from a statutory misrepresentation action, it did so only for claims seeking injunctive relief, not damages. They point out that the express language eliminating the element of reliance is found only in one of the substantive statutes and that statute authorizes only injunctive relief. The tobacco companies argue that, because the statute that authorizes actions for damages, Minn.Stat. § 8.31, subd. 3a, contains no similar express exemption from the reliance requirement, there is therefore no such exemption intended for a damages action. Several courts have embraced this distinction between claims for injunctive relief and claims for damages. *See, e.g., Garay v. Beers,* No. C5–97–2268, 1998 WL 373082, *3 (Minn.App.1998) (unpublished opinion) (holding that plaintiff seeking pecuniary damages under Consumer Fraud Act must prove reasonable reliance on de-

fendant's conduct). *But see Sutton v. Viking Oldsmobile Nissan, Inc.*, 611 N.W.2d 60, 65 (Minn.App.2000) (stating reliance not required for damages action under Consumer Fraud Act).

But subdivision 3a authorizes a damages action for a violation of the substantive statutes. As explained, those statutes define what constitutes a violation, and they do so in a manner that indicates that reliance is not a separate element of a violation. We will not read an element into a statutory claim that the legislature has not articulated and, to the contrary, has indicated should be eliminated.

■ Based on the statutory language, as well as the intent of the legislature to make statutory misrepresentation in sales actions less burdensome than common law fraud actions, we conclude that it is not necessary to plead individual consumer reliance on the defendant's wrongful conduct to state a claim for damages under subdivision 3a and the substantive misrepresentation in sales statutes. Therefore, we answer the first part of the second certified question in the negative.

The second certified question takes the inquiry a step further, however. It asks whether a plaintiff must *prove* reliance in order to recover damages under Minn. Stat. § 8.31, subd. 3a, for violations of Minn.Stat. §§ 325F.67, 325F.69, subd. 1, and 325D.13. It is this aspect of the question that appears to be the real point of contention between the parties.

The tobacco companies argue that, even if reliance is not retained as an independent element of an action for damages under subdivision 3a, the HMOs must nevertheless prove reliance by their members on the alleged wrongful conduct in order to prove their damages were caused by defendants' conduct. The tobacco compa-

nies contend that this causation element is reflected in the statutory requirement that to recover the person must be "injured *by* a violation." Minn.Stat. § 8.31, subd. 3a. (emphasis added). In other words, the tobacco companies assert that the HMOs cannot prove causation without demonstrating reliance on the alleged illegal conduct, and without causation there can be no award of compensatory damages.

It appears that the HMOs do not disagree with this argument in general. Although they may disagree about the details, they concede that they must prove a causal nexus between the allegedly wrongful conduct of the defendants and their damages.

■ Although we conclude that the legislature has eliminated the requirement of pleading and proving traditional common law reliance as an element of a statutory misrepresentation in sales action, the parties are correct that causation remains an element of such a claim. Section 8.31, subdivision 3a, authorizes a damages action only by someone injured *by* a violation. This language denotes a causal relationship between the alleged injury and the wrongful conduct that violates the statute. Causation is, therefore, a necessary element of an action to recover damages under section 8.31, subdivision 3a.[8] Moreover, where, as here, the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the misrepresentation in sales laws, as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes. Therefore, in a case such as this, it will be necessary to prove reliance on those statements or conduct to satisfy the causation requirement. Indeed, while the HMOs might disagree with the use of the word reliance, they appear

---

8. Group Health and HealthPartners allege that their injuries arose "on account of" defendants' wrongful conduct. See Second Amended Complaint of Group Health, paras. 386, 392, 404. Medica alleges that it suffered injuries "[a]s a direct and proximate result"

of defendants' wrongful conduct. See Second Amended Complaint of Medica, paras. 238, 243, 253. Under the notice pleading standards of Rule 12, these allegations are sufficient with respect to causation.

to concede that, as part of their necessary proof of a causal nexus between their damages and the defendants' wrongful conduct, they must demonstrate that defendants' conduct had some impact on their members' use of tobacco products that caused their damages.

The true disagreement between the parties centers on how this causation element may be proven. The HMOs believe they can satisfy the requirement with circumstantial proof, such as studies and expert testimony, that will establish the general impact of the defendants' wrongful conduct on the sale and consumption of tobacco products. The tobacco companies contend that the issue of how causation must be proven is premature and beyond the scope of the certified question, although they acknowledged in oral argument that, when that issue is reached, their position will be that causation can only be proven by evidence of reliance by individual consumers of their products. They assert that this court need only hold that reliance is a necessary part of the proof of causation in these circumstances.

■ The certified questions come to us in the posture of a Rule 12 motion to dismiss for failure to state a claim. The limited focus of such a motion, whether in state or federal court, is the adequacy of the pleadings. *See, e.g., Northern States Power Co. v. Franklin,* 265 Minn. 391, 394, 122 N.W.2d 26, 29 (1963); *Conwed Corp. v. Employers Reinsurance Corp.,* 816 F.Supp. 1360 (D.Minn.1993). It would be inappropriate in the context of a Rule 12 motion to dismiss to delineate in detail what proof is necessary for plaintiffs to recover on these particular claims. Nevertheless, it is appropriate and consistent with the certification process to articulate in general terms the standard of proof to provide some guidance to the federal court as it addresses this issue.

While we conclude that causation is a necessary element in a damages claim un-der the misrepresentation in sales statutes, in light of the reality that the root cause of the HMOs' claimed damages is their members' smoking-related injuries allegedly caused by the misconduct of the tobacco companies and the statutory authorization to "any person injured by a violation" to bring an action, we do not interpret the language of subdivision 3a to require a strict showing of direct causation, as would be required at common law. Rather, as the court of appeals has expressed it, the statute requires that there must be some "legal nexus" between the injury and the defendants' wrongful conduct. *See LeSage v. Norwest Bank Calhoun–Isles, N.A.,* 409 N.W.2d 536, 539 (Minn.App.1987). *Cf. In re Control Data Corp. Securities Litigation (Abbey v. Control Data Corp.),* 933 F.2d 616, 619 (8thCir.1991) ("some causal nexus" required between conduct of defendant and increased market price that damaged plaintiffs in fraud on the market case), *cert. denied,* 502 U.S. 967, 112 S.Ct. 438, 116 L.Ed.2d 457 (1991). This reading is consistent with the intent of the legislature to provide relaxed requirements for pleading and proof in such actions.

■ More to the point, in cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products. Rather, the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct.[9] Further, in the context of the certified question, we reject the view expressed in two federal court decisions that our misrepresentation in sales laws require proof of individual reliance in all actions seeking damages.

---

**9.** *Cf. LensCrafters, Inc. v. Vision World, Inc.,* 943 F.Supp. 1481, 1489 (D.Minn.1996) (holding that actual consumer confusion in a Lan-ham Act claim may be proven through use of consumer testimony or circumstantial evi-

*See Thompson v. American Tobacco Co.,* 189 F.R.D. 544, 553 (D.Minn.1999); *Parkhill v. Minnesota Mut. Life Ins. Co.,* 188 F.R.D. 332, 345 (D.Minn.1999). To impose a requirement of proof of individual reliance in the guise of causation would reinstate the strict common law reliance standard that we have concluded the legislature meant to lower for these statutory actions. Moreover, we are confident that the legislature would not have authorized private damages actions such as this, where the alleged misrepresentations are claimed to have affected a large number of consumers, while retaining a strict burden of proof that depends on evidence of individual consumer reliance.[10]

We decline to answer in any greater detail based solely on the pleadings what manner of proof will be necessary to establish the necessary connection between the HMOs' claimed damages and defendants' conduct. We must leave it to the federal district court to assess this issue in light of not just the allegations, but the evidence offered.[11]

To reiterate, in order to prove their claims for damages under the misrepresentation in sales statutes, the HMOs must establish a causal nexus between their alleged damages and the conduct of the defendants alleged to violate the statutes. This causal nexus has a component of reliance that, in the type of case before the court, may be proven by means other than direct evidence of reliance by individual consumers. Given the procedural posture of this case, we decline to explicate further what method or manner of proof is necessary to satisfy the causal nexus requirement in general or, in this case, in particular. We necessarily must leave resolution of this issue to the federal district court where it can be considered in the concrete context of the evidence actually offered by the parties.

Certified questions answered.

GILBERT, J., and LANCASTER, J., took no part in the consideration or decision of this case.

---

dence such as consumer surveys, consumer reaction tests, or market research).

**10.** We emphasize that we are addressing here only the requirements for the misrepresentation in sales actions before us on these certified questions. The type of proof required to satisfy the causation-based reliance factor may be different in a case of different scope or based on different causes of action.

**11.** The federal court may obtain guidance from decisions concerning the nature of proof required to establish a violation of the Lanham Act, 15 U.S.C. § 1125(a), a federal statute that, like the state laws at issue here, provides a private remedy for false or deceptive advertising. The federal courts have adopted a variety of approaches to this issue in Lanham Act, cases that in our view reflect appropriate sensitivity to the remedial goals of the statute that are paralleled in the statutes at issue here. *See LensCrafters, Inc. v. Vision World, Inc.,* 943 F.Supp. 1481, 1489–90 (D.Minn.1996) (holding where only injunctive relief is sought, the plaintiff need only prove a likelihood of confusion among consumers of the product; where the plaintiff seeks money damages, actual confusion among consumers must be proven); *PPX Enters., Inc. v. Audiofidelity Enters., Inc.,* 818 F.2d 266, 271 (2d Cir.1987) (stating actual consumer confusion may be proven through use of consumer testimony or circumstantial evidence such as consumer surveys or consumer reaction tests); *LensCrafters,* 943 F.Supp. at 1489 (same); *U–Haul Int'l, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1041 (9th Cir. 1986) (explaining that expenditure by a competitor of substantial funds in effort to deceive consumers and influence their purchasing decisions justifies a presumption of actual confusion, and the burden shifts to the defendant to rebut that presumption); *Resource Developers, Inc. v. The Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 140 (2d Cir.1991) (stating that, where evidence shows the defendant deliberately engaged in deceptive commercial practice, the burden shifts to the defendant to demonstrate the absence of consumer confusion); *see also PPX Enters.,* 818 F.2d at 272 (holding that egregious deception eliminates need for plaintiff to prove actual confusion even for damages).