STAUBER, Judge*
For several years, appellants misled prospective students into believing appellants' two-year and four-year criminal-justice programs provided the means to become police officers, and that enrolling in appellants' two-year criminal-justice program was a means to become a probation officer. Following a bench trial, the district court determined that appellants violated the Minnesota Consumer Fraud Act (MCFA) and the Uniform Deceptive Trade Practices Act (UDTPA), and ordered a restitution process for those students who were misled. On appeal, the appellants argue that the district court erred because the state failed to prove the necessary elements of an MCFA violation, the restitution order violated Minnesota law, and the determination that the appellants are jointly liable was improper. Because the state proved the necessary elements of an MCFA violation in respect to testifying students, we affirm in part. Because the restitution order's presumption of injury and causal nexus was not authorized by law with respect to non-testifying students, we reverse in part.
FACTS
Appellants Globe University and Minnesota School of Business ("the schools") are for-profit, post-secondary educational institutions. The schools have many separate campuses from one another, are separately accredited, and keep separate financial records. While the schools are separate legal entities, they have many overlapping qualities. Both schools are owned by the Myhre family; have the same corporate management team, which oversaw uniform operations of both campuses; and are Minnesota corporations that share a principal place of business in Woodbury. Credits at one school can be applied to a program at the other school, and both schools *906 use joint course catalogs. The likenesses go further, as the schools share training materials, student-activity-record systems, instructors, and enrollment agreements. Both schools offer certificates, diplomas, associate's degrees, bachelor's degrees, master's degrees, and doctoral degrees. This appeal is centered on the schools' associate's and bachelor's degrees in criminal justice.
In July 2014, the state sued the schools, alleging that the schools violated both the MCFA and the UDTPA by making false, deceptive, and misleading statements.[1] The misleading statements that are at issue on appeal involve promising prospective students career opportunities unattainable with the criminal-justice degree.[2] The complaint requested injunctive and declaratory relief, civil penalties, restitution under the parens patriae doctrine for all persons injured, litigation costs, and attorney fees.
A bench trial was held in April 2016 on the MCFA and UDTPA claims. The trial lasted 17 days, and over 60 witnesses testified. The state argued that the schools misled prospective students to believe that the bachelor's and associate's degrees in criminal justice provided the means to become a police officer, even though the degrees did not satisfy any aspect of the education required to become a police officer.[3] Similarly, the state argued that the schools misled prospective students that the associate's degree in criminal justice provided the means to become a probation officer, even though the degree did not satisfy any aspect of the education required to become a probation officer.[4]
At trial, the state introduced numerous marketing and advertising exhibits to support its arguments that the schools misled prospective students to believe that their programs were means to become police officers or probation officers. Many of the materials used images of police officers, and the Minnesota School of Business's blog website depicted stories of past students becoming police officers. The school had presentations by police officers and meet-and-greets with police officers. Numerous materials led students to believe the program was a means to become a police officer. For example, Globe University's website stated, "[I]f you're interested in working in law enforcement ... the *907 multidisciplinary field of criminal justice can lead down many different career paths. A degree in criminal justice is useful in a wide variety of positions including: Police officer."
Both schools' program applications included an acknowledgment by applicants that stated, "I acknowledge I have discussed and fully understand the Criminal Justice program offered through Globe University/Minnesota School of Business is not POST certified. I realize this prevents me from being eligible to participate in skills training required to be a sworn police officer in the State of Minnesota." Other materials admitted into evidence instructed employees of the schools to provide applicants accurate disclosures and to avoid any misrepresentations.
Twenty-four students in the schools' programs between 2008 and 2015 testified on behalf of the state.[5] Many students testified that the schools misled them regarding the criminal-justice programs. The testimony of these students shared a common narrative: the prospective student would inform one of the schools of their intent to become a police officer, he would be encouraged by the school to enroll in a criminal-justice program, and he then enrolled in the program in reliance on the schools representations. Numerous school employees also testified, including a former admissions representative from the Minnesota School of Business, who testified that if an individual wanted to become a police officer, she was instructed to sell the program regardless of whether it realistically matched the applicant's career goal.
The schools' expert, Dr. Chiagouris, testified that the state relied on flawed evidence: testimony of select students was not a legitimate method to represent the actual student body. And another expert, Dr. Guryan, testified that the schools' criminal-justice degrees provided substantial net-value earnings to their graduates.
The district court found the that students who testified on behalf of the state were credible, and also found that the testimony of the schools' employee-witnesses, who stated they informed prospective students that they could not become police officers, credible as well. The court found the state's anecdotal evidence regarding the criminal-justice programs persuasive, and it determined that the schools advertised their criminal-justice programs as a means to become a police officer, without disclosing the true requirements of becoming a police officer. It found that the schools' online marketing was directed at prospective students interested in becoming police officers.
The district court found that the schools engaged in false and misleading practices in violation of the MCFA and the UDTPA in relation to their criminal-justice programs. It found that a causal connection existed between the schools' advertising and promotion of the criminal-justice programs and harm to citizens of Minnesota based on the schools targeting prospective students interested in becoming police officers; advertising and suggesting that their programs could lead to becoming a police officer; having recruiters recommend the programs to students interested in becoming police officers; misleading prospective students into believing the two-year degree *908 was sufficient to become a probation officer; and failing to disclose material facts. The district court determined the harm from these actions was both foreseeable and inevitable.
Next, the district court addressed relief. It determined that the schools were jointly liable as they never tried to legally separate themselves, were jointly operated, and were factually indistinguishable.
Although the state represented from the beginning of the case that it would not pursue relief on an individual level, it nonetheless sought restitution for the victims. The district court found that these positions were not incompatible and ordered restitution for not only the 15 students who testified, but also provided a system through which other potentially harmed students could seek relief. The restitution order set up a notice-and-claims process for the schools to provide relief to students who attended the criminal-justice programs and were misled into thinking that they could become police or probation officers. The restitution order required that the schools must notify potentially harmed students, and that eligible claimants have 45 days to complete a claim form. Then, any claimant who demonstrated that he or she enrolled in a criminal-justice program with the understanding he or she would be qualified to become a police officer or probation officer would receive a rebuttable presumption of harm and causation. The schools had the opportunity to request documentation and to dispute any claims. And if the parties cannot come to a resolution, then the schools have the opportunity to had a third party make a binding decision.
The schools appeal.
ISSUES
I. Did the district court err in determining that the state established a causal nexus between the schools' conduct and the alleged harm to the 15 students who testified?
II. Did the district court err in determining that the state established a causal nexus between the schools' conduct and the alleged harm to the students who did not testify?
III. Did the district court err by determining that both schools were jointly liable?
ANALYSIS
On appeal, the schools set forth numerous arguments challenging the district court's determination that the schools are jointly liable under the MCFA to any student. The schools also challenge the restitution order and its rebuttable presumption of injury and a causal nexus. To address these arguments, we examine whether the district court erred in (1) its liability and restitution determinations as to the 15 students who testified; (2) its a restitution process that included a rebuttable presumption of injury and causal nexus as to non-testifying students; and (3) its determination that the schools are jointly liable for all damages.
I.
We start our analysis by determining whether the district court erred in holding the schools liable for damages under the MCFA regarding the 15 students who testified. The MCFA states that
[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable.
*909 Minn. Stat. § 325F.69, subd. 1 (2016). The attorney general may bring a civil action for violation of the statute, and may receive "equitable relief as determined by the court." Minn. Stat. § 8.31, subd. 3a (2016).[6] This includes seeking restitution under the doctrine of parens patriae. Id. ; see also State by Humphrey v. Ri-Mel, Inc. , 417 N.W.2d 102, 112 (Minn. App. 1987) (stating that under the doctrine of parens patriae, the state "may maintain a legal action on behalf of its citizens, where state citizens have been harmed and the state maintains a quasi-sovereign interest"), review denied (Minn. Feb. 17, 1988).
To recover damages for an MCFA violation, the plaintiff must show harm, wrongful conduct, and a causal nexus between the two, and this causal nexus includes a reliance component. Flynn v. Am. Home Prods. Corp. , 627 N.W.2d 342, 351 (Minn. App. 2001). The Minnesota Supreme Court provided guidance on these elements in Group Health Plan, Inc. v. Philip Morris Inc. , 621 N.W.2d 2 (Minn. 2001). In Group Health , several HMOs brought actions under the MCFA against tobacco companies to recover the costs of increased health-care services. Id. at 4. The HMOs alleged that they were directly injured by the tobacco companies' deceptive statements urging them not to engage in tobacco education programs, and indirectly injured by the tobacco companies' deceptive conduct because of increased medical services they had to provide. Id. at 4-5. The supreme court held that there must be reliance and a causal nexus between the harm and the wrongful conduct, and this can be "established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." Id. at 14. The supreme court reiterated:
[T]o prove their claims for damages under the misrepresentation in sales statutes, the HMOs must establish a causal nexus between their alleged damages and the conduct of the defendants[.] ... This causal nexus has a component of reliance that, in the type of case before the court, may be proven by means other than direct evidence of reliance by individual consumers.
Id. at 15.
For the 15 students who testified, the evidence in the record supports the district court's determination that the state proved wrongful conduct, harm, and a causal nexus between the two. The district court found that the schools engaged in a variety of wrongful conduct, including targeting prospective students who wished to become police officers, advertising the programs as making graduates eligible to become police officers, and explicitly misleading prospective students. Similarly, the students who testified explained how they were harmed: they paid tuition for a degree that did not serve its purpose-to enable them to become police or probation officers. In light of the testimony of the students explaining how the school's wrongful conduct led to their harm, a causal nexus between the wrongful conduct *910 and harm was present, including the reliance component.
The schools contend that the district court erred by applying the wrong standard to determine if the causal-nexus element was met. The schools point to language in the district court's order indicating that the causal-nexus element was satisfied because the conduct here was "inevitable and foreseeable." They contend that this ignores the necessary-reliance component of the causal-nexus element, as stated in Group Health , 621 N.W.2d at 13-15. But this oversimplifies what the district court actually stated. The district court found that the students provided anecdotal testimony about the direct harm caused by the schools' wrongful acts. It then stated that the consequences of this wrongful conduct was so inevitable and foreseeable, that it must satisfy the causal-nexus requirement set out in Group Health . While the district court did not explicitly use the word reliance, it did not apply or adopt a new standard, but instead phrased the element of reliance in terms of the natural consequences of the schools' actions and the evidence presented at trial. These conclusions are consistent with Group Health , where the Minnesota Supreme Court held "the causal nexus and its reliance component may be established by other direct or circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." 621 N.W.2d at 14. In this case, students testified that they relied on the schools' wrongful conduct and that wrongful conduct caused them harm. Because the district court properly analyzed the causal-nexus element, and its analysis was supported by the record, the court did not apply the wrong standard.
Because the state proved all of the required elements to support a violation of the MCFA in regards to the 15 students who testified, the district did not err in holding the schools liable and ordering restitution for these 15 students.
II.
We now turn to the potential claimants, former students who did not testify, but for whom the district court fashioned restitution relief. For these potentially harmed students, the state was still required to establish harm, wrongful conduct, and a causal nexus-including reliance-between the two. See Flynn , 627 N.W.2d at 351.
Unlike the 15 students who testified about the harm caused by their reliance on the schools' wrongful conduct, the record is mostly silent regarding the other criminal-justice-student population. Undoubtedly, the schools engaged in a wide range of wrongful conduct. But the state did not prove if and how the schools' wrongful conduct impacted the student population outside of the 15 students who testified. Nonetheless, the district court ordered a restitution process for these non-testifying students whereby they can submit a claim stating that they were misled by the schools' wrongful conduct, with the causal nexus rebuttably presumed. This is problematic-no legal authority supports the use of a rebuttable presumption of a causal nexus between the schools' wrongful conduct and students' harm.[7]
*911 The state was required to prove a causal nexus between the wrongful conduct and harm to any student for whom it sought relief. See Group Health , 621 N.W.2d at 13 (stating causation is a "necessary element"); see also 27 Michael K. Steenson et al., Minnesota Practice § 6.13 (2017-2018 ed.) (stating that plaintiffs need "to prove that the defendant proximately caused [their] loss"). In Group Health , the supreme court left open the method of how plaintiffs are to prove this element. Id. at 15. The court explained that direct evidence of reliance by all consumers is not necessary, and instead it may be established by other direct or circumstantial evidence that the district court determines is relevant and probative. Id. at 14. Or, as we have since explained, " Group Health instructs that the required causal nexus may be established when there is something to connect the claimed damages and the alleged prohibited conduct." Curtis v. Altria Grp., Inc. , 792 N.W.2d 836, 858 (Minn. App. 2010) (quotations omitted), rev'd on other grounds , 813 N.W.2d 891 (Minn. 2012). But nothing in Group Health suggests that this requirement can be presumed for purposes of restitution when it was not proved at trial. Here, although the state proved the existence of wrongful conduct by the schools, it offered only limited anecdotal testimony by the 15 testifying students. This only demonstrates the experiences of those specific students. In this case, where student experiences may vary significantly, this lack of evidence is troubling. Although Group Health stands for the proposition that district courts have a wide range of discretion in accepting relevant evidence to satisfy the causal-nexus element, it does not stand for the application of a rebuttable presumption.[8]
We conclude that the restitution order does not satisfy the state's burden to prove a causal nexus between the schools' wrongful conduct and harm to the non-testifying students. The restitution order cannot presume this element is met. Holding otherwise would modify the substantive law of requiring the element to be proved. See Grp. Health Plan, Inc. v. Philip Morris , Inc. , 188 F.Supp.2d 1122, 1126 (D. Minn. 2002) (rejecting the plaintiffs' argument that causation may be presumed, and recognizing that doing so "would amount to a radical sea change in Minnesota consumer protection law"), aff'd in part and remanded sub nom. , 344 F.3d 753 (8th Cir. 2003). The state cites no authority to support the proposition that anecdotal evidence of only 15 testifying students is sufficient to meet the burden of proving causation for a large student body. Nor does it cite to any authority to support the application of a rebuttable presumption of a causal nexus between wrongful conduct and harm under the MCFA.[9] We conclude that the district *912 court erred by determining that the state proved a causal nexus with respect to students who did not testify.
The state argues that the Lanham Act and federal caselaw support the restitution order presuming causation for claimants. Specifically, it emphasizes footnotes 9 and 11 in Group Health . In footnote 9 in Group Health , the supreme court noted that plaintiffs need not include direct evidence of reliance by all individual consumers:
Cf. LensCrafters, Inc. v. Vision World, Inc. , 943 F.Supp. 1481, 1489 (D. Minn. 1996) (holding that actual consumer confusion in a Lanham Act claim may be proven through use of consumer testimony or circumstantial evidence such as consumer surveys, consumer reaction tests, or market research).
621 N.W.2d at 14-15, n.9. And in footnote 11, the supreme court noted that the nature of proof needed to establish a violation of the Lanham Act, 15 U.S.C. § 1125(a) (2012), may be informative as to the nature of proof needed to establish the reliance element:
The federal court may obtain guidance from decisions concerning the nature of proof required to establish a violation of the Lanham Act, 15 U.S.C. § 1125(a), a federal statute that, like the state laws at issue here, provides a private remedy for false or deceptive advertising. The federal courts have adopted a variety of approaches to this issue in the Lanham Act, cases that in our view reflect appropriate sensitivity to the remedial goals of the statute that are paralleled in the statutes at issue here. See LensCrafters, Inc. v. Vision World, Inc. , 943 F.Supp. 1481, 1489-90 (D. Minn. 1996) (holding where only injunctive relief is sought, the plaintiff need only prove a likelihood of confusion among consumers of the product; where the plaintiff seeks money damages, actual confusion among consumers must be proven); PPX Enters., Inc. v. Audiofidelity Enters., Inc. , 818 F.2d 266, 271 (2d Cir. 1987) (stating actual consumer confusion may be proven through use of consumer testimony or circumstantial evidence such as consumer surveys or consumer reaction tests); LensCrafters , 943 F.Supp. at 1489 (same); U-Haul Int'l, Inc. v. Jartran, Inc. , 793 F.2d 1034, 1041 (9th Cir. 1986) (explaining that expenditure by a competitor of substantial funds in effort to deceive consumers and influence their purchasing decisions justifies a presumption of actual confusion, and the burden shifts to the defendant to rebut that presumption); Resource Developers, Inc. v. The Statue of Liberty-Ellis Island Found., Inc. , 926 F.2d 134, 140 (2d Cir. 1991) (stating that, where evidence shows the defendant deliberately engaged in deceptive commercial practice, the burden shifts to the defendant to demonstrate the absence of consumer confusion); see also PPX Enters. , 818 F.2d at 272 (holding that egregious deception eliminates the need for plaintiff to prove actual confusion even for damages).
Group Health , 621 N.W.2d at 15, n.11. The state's reliance on these footnotes as support for creating a presumption of causal nexus is misplaced. None of the cases cited in the footnotes suggest that presuming a causal nexus is appropriate, and such a presumption is contrary to Group Health 's admonition that a causal nexus is a necessary element.
*913 While not binding, federal caselaw has similarly rejected the footnotes in Group Health as approving of the use of presumptions to establish the causal-nexus element. See Citizens for a Balanced City v. Plymouth Congregational Church , 672 N.W.2d 13, 20 (Minn. App. 2003) (noting that while not binding, federal caselaw may be persuasive). After a remand from the Minnesota Supreme Court in Group Health , the federal district court rejected this exact argument. Grp. Health Plan, Inc. , 188 F.Supp.2d at 1126 ("The Court finds Plaintiffs' arguments unpersuasive. Plaintiffs' first argument rests on the dubious proposition that footnote 11 in Group Health , merely listing examples of a 'variety of approaches' which this Court might consider when assessing whether causation exists, somehow shifts the burden of proof on causation from Plaintiffs to Defendants."). Similarly, the Eighth Circuit Court of Appeals noted that it is erroneous to automatically equate the standards of relief under the Lanham Act with the Minnesota consumer protection statutes. See Buetow v. A.L.S. Enters., Inc. , 650 F.3d 1178, 1183 (8th Cir. 2011) ("Automatically equating the standards of these state statutory claims to the standards that apply to Lanham Act cases between commercial parties is wrong. When the plaintiffs are consumers who have proved no future harm, as in this case, it is an error of law to assume that a false statement materially deceived and injured the plaintiffs.").
In sum, the state failed to prove the causal-nexus element as to the non-testifying students and the law does not permit the district court to presume this nexus exists. Therefore, it did not prove that the schools are liable to these students under the MCFA. We reverse the district court's restitution order as to the non-testifying students.
III.
The schools contend that the district court erred when it determined that the schools are jointly liable, arguing that the state did not plead anything regarding joint enterprise or joint venture, nor did it seek joint-liability relief in its pleadings.[10] To address the district court's determination of joint liability, we determine (1) whether sufficient evidence supports a finding of either a joint enterprise or joint venture, and (2) whether the state's pleadings precluded the district court from holding the schools jointly liable.
We address whether the evidence is sufficient to support the district court's determination that the schools were either a joint enterprise or joint venture. Whether a joint venture or a joint enterprise exists is a question of law, which this court reviews de novo. Beehner v. Cragun Corp. , 636 N.W.2d 821, 832 (Minn. App. 2001), review denied (Minn. Feb. 28, 2002). We start our analysis with joint enterprises.
A joint enterprise requires "(1) a mutual undertaking for a common purpose, and (2) a right to some voice in the direction and control of the means used to carry out the common purpose." Hansen v. St. Paul Metro Treatment Ctr., Inc. , 609 N.W.2d 625, 628 (Minn. App. 2000), review denied (Minn. July 25, 2000). Both elements are satisfied here. The schools engaged in a mutual undertaking for a common purpose, as reflected in the district court's findings that the schools' operations were uniform; and that they shared *914 enrollment agreements, instructors, and course catalogs. Furthermore, the schools shared the same corporate management and are owned by the same family, which had the right to control both schools.[11]
The schools argue that neither the existence of a joint venture or a joint enterprise is supported by the record because the state primarily relies on the fact that the schools shared employees and resources, which is insufficient to support either theory under Hansen , 609 N.W.2d at 629 (Minn. App. 2000). In Hansen , this court stated the fact that "the entities at issue here may have shared common employees or that one entity may have used the services of the other entity does not lead to the conclusion that there was the requisite contribution or control such that they engaged in a joint venture as a matter of law." Id. But, here, shared employees and resources are only two factors among several other factors that lead to the conclusion that the schools engaged in a joint enterprise.
The schools also contend that the state waived its right to pursue joint liability because it did not plead it. However, they do not cite to any binding legal authority, but rather direct our attention to an unpublished decision, where this court held that because the pleadings failed to allege a joint enterprise or joint venture, it was not an error for the district court to decline to consider joint liability on a summary judgment motion. Not only does this case not stand for the proposition that it is improper for a district court to hold defendants jointly liable when it was not pleaded in the complaint, as was the case here, but it holds little persuasive value as an unpublished decision. See Dynamic Air, Inc. v. Bloch , 502 N.W.2d 796, 800 (Minn. App. 1993) (stating that it is "improper to rely on unpublished opinions as binding precedent").
Because the record contains sufficient evidence to support the district court's determination that the schools conducted a joint enterprise, and because the state's pleadings did not preclude the court's determination that the schools are jointly liable, the district court did not err in its joint-liability determination.
DECISION
The schools in this matter engaged in wrongful conduct in violation of the MCFA. The state nevertheless must satisfy its burden of proof as to all of the elements under the MCFA, including a causal nexus, when seeking damages. The state failed to satisfy its burden because there was no evidence presented regarding the causal nexus for any student who did not testify, and the district court's restitution order presuming proof of this element was erroneous. We therefore reverse the district court's order regarding relief for the students who did not testify, but otherwise affirm.
Affirmed in part, reversed in part.

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

The complaint also alleged unlicensed lending in violation of Minnesota Statutes section 56.01, and usury in violation of Minnesota Statutes section 334.01. The district court granted summary judgment in favor of the schools on both of these counts, and neither are at issue on appeal.

The state also unsuccessfully argued other instances of false, deceptive, and misleading statements, which included misleading students on the transferability of credits obtained at the school and inflating job-placement rates. Only the statements regarding the criminal-justice degrees are at issue on appeal.

To become a police officer in Minnesota, individuals need to meet both academic and skills-training requirements before becoming eligible to take the Minnesota Licensure Exam. With few exceptions, this can be done in one of two ways. First, students may obtain a degree approved by the Minnesota Peace Officer Standards and Training (POST) board, which satisfies both the academic and skills-training requirements. The schools' criminal-justice programs were not approved by the POST board, and did not meet this requirement. Second, students may obtain a two-year degree at a regionally accredited college to satisfy the academic requirement, and then complete a POST Peace Officer Education program to satisfy the skills-training requirement. See Minn. Stat. § 626.84, subd. 1(g) (2016). The schools' criminal-justice programs were not regionally accredited and did not meet this requirement.

To become a probation officer in Minnesota, an individual must first obtain a bachelor's degree. Thus, the associate's degree from the schools would not suffice.

Of the 24 students who testified on behalf of the state, 15 testified to being misled by the schools' criminal-justice programs and suffering economic harm. Separately, four students testified on behalf of the schools, but only one was enrolled in a criminal-justice program. This student testified that at the time of his enrollment, he did not have any interest in becoming a police officer.

Minn. Stat. § 8.31, subd. 3a, states in full:
In addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages , together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality. In any action brought by the attorney general pursuant to this section, the court may award any of the remedies allowable under this subdivision .
(Emphasis added.)

The schools also argue that the restitution order was improper because it exceeded the state's authority under the parens patriae doctrine and because it violated their right to due process. We do not reach these arguments in light of our determination that the relief granted to the non-testifying students is not allowed by law.

The schools argue that as a matter of law, the anecdotal evidence was insufficient to generalize the testimony of the witnesses to the larger student population. The schools argue that to prove causation for a larger population, the state needed either a survey, individual testimony from all the consumers, or individual anecdotes and a study showing the testimony was representative. We decline to adopt any specific thresholds of what constitutes sufficient evidence to prove causation as it relates to a large population, we only discern that, here, the testimony of only 15 testifying students regarding their specific experiences does not warrant creating a restitution process where the causal nexus is presumed for the rest of the student body.

The state argues that the restitution order includes only a rebuttable presumption, and that the schools have the opportunity to challenge any claim, are entitled to discovery, and can have an independent third party review individual claims. But we note that at oral arguments, the state suggested that if the schools challenged each request for restitution, the schools would be engaging in bad faith. This gives rise to the inference that the state may seek protection from the district court under those circumstances and this stands in contrast to the state's argument that the schools have the ability to challenge any claim they wish. Regardless of the state's position about the benefit to the schools of the rebuttable nature of the presumption, the law does not allow the presumption.

The schools also contest the district court's determination that their argument regarding joint liability was waived. Because we determine the application of joint liability on the merits, we do not reach the propriety of the court's determination that the schools waived the issue.

Because the record supports the determination that a joint enterprise exists, we do not determine whether a joint venture exists.