# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

―――――――

No. 04-3040

―――――――

Aviation Charter, Inc.,

       Appellant,

v.

Aviation Research Group/US;
Joseph Moeggenberg,

       Appellees.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of Minnesota.
\*
\*
\*
\*

―――――――

Submitted: March 17, 2005
Filed: July 21, 2005

―――――――

Before WOLLMAN, GIBSON, and COLLOTON, Circuit Judges.

―――――――

WOLLMAN, Circuit Judge.

Aviation Charter, Inc. (Aviation Charter), appeals from the district court's[1] grant of summary judgment to Aviation Research Group/US (ARGUS) on Aviation Charter's claims of defamation and alleged violations of the Minnesota Deceptive Trade Practices Act (MDTPA), Minn. Stat. § 325D.44(8), and the Lanham Act, 15 U.S.C. § 1125(a)(2). We affirm.

―――――――

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

**I.**

ARGUS publishes and sells safety ratings of air charter service providers. It bases its ratings on a methodology called the Charter Evaluation and Qualifications (CHEQ) system, which has "three major components: Historical Safety Ratings, Current Aircraft and Pilot Data, and On-Site Safety Audits." June 12, 2003, CHEQ Report on Aviation Charter (CHEQ Report) at 2.[2] ARGUS maintains that it:

> . . . conducts in-depth research into multiple public databases to uncover accidents, incidents, enforcement actions, and certification data relating to the operator. Records that are discovered are assigned a score based on the official cause, violation, or other data on record. Older records have less impact on the score and are omitted after ten years. The total of all found records results in a Historical Safety Record score, with the higher score reflecting a greater number of negative events.

Id. Carriers are grouped into four classes of operation based on the number of aircraft they operate. Id. ARGUS assigns carriers one of four ratings: Does Not Qualify (DNQ), Silver, Gold, and Platinum. Id. The Silver rating is assigned to "[t]hose operators with CHEQ scores within one standard deviation of the median score for their class of operation." Id. The DNQ rating is the lowest possible rating.

ARGUS provides its rating and supporting documentation in a written report. Each report contains a disclaimer providing, in relevant part, that:

> The data contained in this report has been obtained from the U.S. Federal Aviation Administration and the National Transportation Safety Board under the Freedom of Information Act, as well as through primary research techniques. The data contained in this report is of an advisory nature only. Although significant effort has been made to verify that the data is true and correct, [ARGUS] does not warrant that this data is

---

[2]Because the only complete copy of ARGUS's report on Aviation Charter in the record on appeal is dated June 12, 2003, we refer to that version of the report.

complete or without errors. . . . [ARGUS] is not the official source of this data, so users are encouraged to verify the data through official sources prior to drawing any conclusions or basing decisions on this data.

Id.

In 2001, ARGUS assigned a DNQ rating to Aviation Charter. The following year, Senator Paul Wellstone and seven others died in an Aviation Charter crash (the Wellstone crash). Following the Wellstone crash, the *Minneapolis Star Tribune* published an article entitled "Wellstone charter firm got poor safety evaluation." The *Star Tribune* article referred to ARGUS's report on Aviation Charter and quoted ARGUS's president, Joe Moeggenberg.

The article also contained a section entitled "Company's response." That section quoted Aviation Charter's owners, Roger and Shirley Wikner, who maintained that ARGUS's report "contained inaccuracies about Aviation Charter's fleet of aircraft." The Wikners also noted in the article that Hynes and Associates, Inc. (Hynes), an aviation auditing firm, had recently conducted a positive audit of Aviation Charter. The article quoted Hynes's safety auditor as being "very impressed" with Aviation Charter's management and operations and mentioned that Hynes had recently sent a letter to the Wikners stating that "you and your staff have been, and still are, providing safe and high-quality air transportation services to the public."

The *Star Tribune* article reported that Richard Conry, the captain of the plane lost in the Wellstone crash, "had a felony fraud conviction on his record that Aviation Charter said it did not know about," and that Conry had "exaggerated his flying experience when he applied to Aviation Charter." The article noted that "[a]viation experts have speculated that Conry and Michael Guess, his relatively inexperienced

co-pilot, may have lost control of the twin turboprop Beechcraft King Air A100 by flying too slowly in their approach to Eveleth-Virginia Municipal Airport."

After the *Star Tribune* article was published, Aviation Charter contacted ARGUS and inquired about the basis of its rating. Aviation Charter concluded that ARGUS's rating system was fundamentally flawed and, when ARGUS refused to retract its rating, Aviation Charter initiated this lawsuit. On ARGUS's motion for summary judgment, the district court concluded that Aviation Charter could not demonstrate that ARGUS's statements were published with actual malice and that the statements were not actionable under the MDTPA or the Lanham Act. Aviation Charter appealed.

## II.

We review *de novo* the district court's grant of summary judgment. Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Employers Mut. Cas. Co. v. Wendland, 351 F.3d 890, 893 (8th Cir. 2003). We view the evidence and the inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). We review the district court's interpretation of Minnesota law *de novo*. Toney v. WCCO Television, Midwest Cable and Satellite, Inc., 85 F.3d 383, 386 (8th Cir. 1996).

### A.

A statement is defamatory under Minnesota law if it is communicated to a third party, is false, and tends to harm the plaintiff's reputation in the community. Graning v. Sherburne County, 172 F.3d 611, 617 (8th Cir. 1999) (citing Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980)). It is well recognized in Minnesota that the First Amendment absolutely protects opinion that lacks "a provably false statement of fact." McClure v. American Family Mut. Ins. Co., 223 F.3d 845, 853

(8th Cir. 2000) (quoting Hunter v. Hartman, 545 N.W.2d 699, 706 (Minn. Ct. App. 1996)). Statements about matters of public concern that are not capable of being proven true or false and statements that reasonably cannot be interpreted as stating facts are protected from defamation actions by the First Amendment. Fox Sports Net North, L.L.C. v. Minnesota Twins Partnership, 319 F.3d 329, 336-37 (8th Cir. 2003) (citing McGrath v. TCF Bank Sav., FSB, 502 N.W.2d 801, 808 (Minn. Ct. App. 1993)). In analyzing a defamation claim, we must consider the context within which the statement was made. Id. at 337 (citing Hunt v. Univ. of Minnesota, 465 N.W.2d 88, 94 (Minn. Ct. App. 1991)). Cf. Schlieman v. Gannett Minnesota Broadcasting, Inc., 637 N.W.2d 297, 304 (Minn. Ct. App. 2001) ("Context is critical to meaning because a false statement that is defamatory on its face may not be defamatory when read in context." (citation omitted)); Jadwin v. Minneapolis Star and Tribune Co., 390 N.W.2d 437, 443 (Minn. Ct. App. 1986).

Aviation Charter challenges ARGUS's adverse safety rating and seven statements in the *Star Tribune* article:

1. More than a year before the [Wellstone crash], a national research firm was warning its customers about safety concerns it had with [Aviation Charter].

2. [ARGUS], which sells data and analysis on charter firms to corporations and other organizations, in 2001 gave Aviation Charter a "Does Not Qualify" or "DNQ" rating, the lowest of the company's four safety ratings.

3. Among the 875 air charter firms across the country that have been rated by [ARGUS], 66, or about 8 percent, currently have the DNQ rating.

4. The DNQ rating warns clients that Aviation Charter does not meet the firm's safety standards. In an interview, [Moeggenberg] said his

-5-

firm's 77-page report on Aviation Charter shows "a history of problems" including a fatal crash in 1977.

5. Of the nine Minnesota charter operators rated by [ARGUS] eight received a "Silver," or acceptable, designation. Aviation Charter received the only Does Not Qualify rating.

6. The [ARGUS] rating system also takes note of FAA enforcement actions. Aviation Charter, its affiliated companies, pilots and planes drew 15 enforcement actions dating to 1991.

7. [G]iven the size of company—24 planes for Aviation Charter—"that's a lot [of enforcement actions]," Moeggenberg said.

We begin by parsing the seven allegedly defamatory statements. With three exceptions—the "report on Aviation Charter shows 'a history of problems'"; "Aviation Charter, its affiliated companies, pilots and planes drew 15 enforcement actions dating to 1991"; and Aviation Charter had "a lot [of enforcement actions]"—the excerpts from the *Star Tribune* article are wholly derivative of the uncontested fact that ARGUS assigned Aviation Charter an unfavorable safety rating. Accordingly, the bulk of Aviation Charter's defamation allegations arising from the *Star Tribune* article are subsumed by Aviation Charter's challenge to ARGUS's rating. That rating can be summarized by the comparison, implicit in ARGUS's rating, that "Aviation Charter, relative to other carriers of its size, has an unfavorable safety record."[3] If this comparison is not defamatory then none of the derivative statements in the *Star Tribune* article is defamatory.

---

[3]Although the district court focused more narrowly on "ARGUS's safety rating of Aviation Charter," D. Ct. Order of July 10, 2004, at 8, that rating only has meaning relative to the ratings assigned to other carriers in the same class of operation as Aviation Charter.

1.

We turn first to the statements not derivative of ARGUS's rating. The only interpretive analysis we need apply to Moeggenberg's statement that the report on Aviation Charter showed a history of problems is to determine whether more than one past event cited in ARGUS's report could fairly be characterized as a problem. ARGUS's report referred to the following incidents involving Aviation Charter aircraft that occurred prior to the Wellstone crash: (1) a 1997 crash that killed two and injured one; (2) a 1995 unauthorized flight by an intoxicated student pilot; and (3) several in-flight emergencies resulting from equipment malfunction. We believe that each of these concerns could fairly be characterized as a problem. Accordingly, Moeggenberg's contention that Aviation Charter had a history of problems is not a false statement.

The *Star Tribune* article asserted that ARGUS's report indicated that Aviation Charter drew fifteen Federal Aviation Administration (FAA) enforcement actions.[4] Aviation Charter contends that this statement is false because the details cited from the FAA's Enforcement Information System (EIS) refer to administrative actions, not enforcement actions. The FAA makes a clear distinction between "legal enforcement actions" and "administration actions," see 14 C.F.R. § 13.11 (2005), and it is evident from ARGUS's report that, with one exception, the EIS details fell into the latter category. See Appellees' Appendix at 58-71 (containing EIS details that refer to administrative actions, letters of correction, and warning notices).[5] Accordingly, it

---

[4]Although it is unclear whether the term "enforcement actions" originated with ARGUS or was construed by the *Star Tribune* reporter, we assume for purposes of our analysis that the term came from ARGUS.

[5]The one exception stems from an August 18, 1994, violation. See Appellees' Appendix at 61. We are unable to determine from our reading of the Enforcement Information System (EIS) details pertaining to this violation whether the FAA action was an administrative action or a legal enforcement action. Such a determination is not material to our analysis, however, because it is clear that ARGUS incorrectly

was technically incorrect for ARGUS to characterize the EIS details as enforcement actions. Nonetheless, the statement in context was not defamatory. The *Star Tribune* article, in the sentence immediately following the improper characterization, noted that "[m]ost [of the FAA violations] were minor or administrative matters and none resulted in a fine." The technical misuse of the term "enforcement action" was thus cured by the subsequent description of the notices as administrative matters. Moreover, any potential harm caused by the improper characterization was overshadowed by at least three other eye-catching observations highlighted in the *Star Tribune* article: (1) the pilot of the aircraft that crashed apparently had a felony fraud conviction and had misrepresented his experience; (2) the crash may have been caused by a lack of experience by the pilot and co-pilot; and (3) according to ARGUS, Aviation Charter had a poor safety record relative to other carriers of its size (which, as we discuss below, was not defamatory). In light of the context in which the statement was made, we conclude as a matter of law that Moeggenberg's use of the term "enforcement actions" could not have tended to harm Aviation Charter's reputation in the community.[6] We reach the same conclusion as to Moeggenberg's comment that Aviation Charter had "a lot" of enforcement actions for a company of its size.

characterized a substantial number of administrative actions as enforcement actions.

[6]Aviation Charter also contends that ARGUS's reference to fifteen actions is numerically erroneous. Aviation Charter cites as evidence an excerpt from a February 27, 2003, copy of ARGUS's report, which indicates that Aviation Charter had received only eleven EIS notices. Because neither party has submitted a copy of the report that was printed contemporaneous with the *Star Tribune* article, we are unable to determine from the record the number of EIS notices that Aviation Charter had received at the time that the article was written. It is sufficient for our purposes that ARGUS incorrectly characterized a number of administrative actions as enforcement actions.

2.

We have characterized the balance of Aviation Charter's defamation claim as derivative of ARGUS's comparison that "Aviation Charter, relative to other carriers of its size, has an unfavorable safety record." We must examine whether this comparison is "sufficiently factual to be susceptible of being proved true or false." Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990). If ARGUS had offered a wholly subjective basis for its conclusion, or even no basis whatsoever, then the comparison would likely have lacked objectively verifiable criteria. ARGUS, however, asserted that its comparative rating was derived from "multiple public databases to uncover accidents, incidents, enforcement actions, and certification data relating to the operator." CHEQ Report at 2. Nonetheless, although ARGUS's comparison relies in part on objectively verifiable data, the interpretation of those data was ultimately a subjective assessment, not an objectively verifiable fact. ARGUS's description of its process illustrates the subjective component of its assessment:

> [Incidents] are rated on a scale of 1-10. ARGUS has trained its analysts to follow general guidelines for the type of incident and severity of the action. The analysts then make independent judgments based on the information in the database regarding the report. They review the facts in the documents and can "hyper link" to the specific regulation that was violated. If they believe that a drastic variation from the computer assigned score is warranted, the three analysts can caucus and discuss the incident and draw on outside scores if necessary. The individual "scores" for each incident are then weighted so that the scores in the most recent 36 months are more significant than those that occurred more than three years ago. The weighted scores are added together and compared to like-sized carriers.

ARGUS Brief at 11-12. ARGUS chose which underlying data to prioritize, performed a subjective review of those data, and defined "safety" relative to its own methodology.

-9-

In Milkovich, the seminal Supreme Court precedent on the analysis of opinion under defamation law, the Court considered a lawsuit brought by a former high school wrestling coach against a newspaper and reporter stemming from a column in the newspaper that implied that the coach had lied under oath in a judicial proceeding. 497 U.S. at 3. Although the Court declined to establish "an additional separate constitutional privilege for 'opinion,'" it observed that the dispositive question was "whether a reasonable factfinder could conclude that the statements in the [newspaper] column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding." Id. at 21. The Court noted that "the connotation that [Milkovich] committed perjury is sufficiently factual to be susceptible of being proved true or false." Id. It observed that "[u]nlike a subjective assertion the averred defamatory language is an articulation of an objectively verifiable event." Id. (quoting Scott v. News-Herald, 496 N.E.2d 699, 707 (Ohio 1986)).

Unlike the reporter's assertion in Milkovich, ARGUS's interpretation of the public database information available on Aviation Charter is not "sufficiently factual to be susceptible of being proved true or false." Id. It is a subjective interpretation of multiple objective data points leading to a subjective conclusion about aviation safety. Cf. Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993) ("A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."). Because ARGUS's comparative rating is not "a provably false statement of fact," McClure, 223 F.3d at 853, Aviation Charter's defamation claim fails with respect to that rating and the derivative statements in the *Star Tribune* article.

B.

Aviation Charter asserts that ARGUS violated the Lanham Act because ARGUS's statements to the *Star Tribune* were made to advertise the fact that ARGUS was in the business of rating carriers like Aviation Charter. The Lanham Act requires that a false statement, in order to be actionable, must be made in commercial advertising or promotion. See Group Health Plan, Inc. v. Philip Morris, Inc., 68 F. Supp.2d 1064, 1069 (D. Minn. 1999). For a statement to constitute commercial advertising or promotion, it must be made, *inter alia*, by a defendant who is in commercial competition with the plaintiff. Id. The district court correctly found that Aviation Charter's Lanham Act action failed because ARGUS was not in commercial competition with Aviation Charter.

C.

The district court concluded that Aviation Charter's MDTPA action, like its Lanham Act action, failed because ARGUS was not in competition with Aviation Charter. As ARGUS concedes, however, the district court erred in so holding because the MDTPA provides that "a complainant need not prove competition between the parties." Minn. Stat. § 325D.44, subd. 2.

The MDTPA provides that a person engages in a deceptive trade practice when, *inter alia*, the person "disparages the goods, services, or business of another by false or misleading representation of fact." Id. at subd. 1 ¶ 8. As set forth above, ARGUS's statement that Aviation Charter had fifteen FAA enforcement actions was false. Accordingly, that statement would violate the MDTPA if it disparaged Aviation Charter. We conclude, however, that Aviation Charter cannot demonstrate that the statement disparaged its business, given the full context of the *Star Tribune* article. Cf., supra, part II(A)(2) (applying same analysis to Aviation Charter's defamation claim with respect to ARGUS's statement that Aviation Charter had fifteen FAA enforcement actions).

-11-

## III.

The district court's grant of summary judgment is affirmed.

_____