# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-1453

_____

Timothy Johnson,                           *
                                           *
            Appellant,                     *
                                           *
    v.                                     *
                                           *
Martha Hamilton; Dr. Jacques Lamour;       *
Jane Doe, (Sarah), Nurse; David            *
Dormire; Gary B. Kempker; Lisa Jones;      *
Joseph Jay Cassady, Constituent Service    *
Assistant; Bowen Clifton, FUM 5-C;         *   Appeal from the United States
Charlie Verdugo, CCW 5-C; Bill             *   District Court for the
Galloway, Assistant Superintendent;        *   Western District of Missouri.
Marian Ortbals, FUM; Elmer Wankum,         *
FUM; Arthur Woods, Associate               *
Superintendent; Susie Akers, Nurse;        *
R. Bainbridge, CCA; Stanley Keeley,        *
CCA; Robert Walling, Lt. CO III;           *
Michael Campbell, Lt. CO III; Judy         *
McClendon, Sgt.; Gene James, CCW;          *
Denise Ponder, Medical Director at         *
JCCC; David Webster, Caseworker;           *
Stanley C. Swicord, CCA; Wanda Roam,*
JCCC Prison Investigator; Dora B.          *
Schriro, Former Director JCCC; Sam         *
Plaster, JCCC Prison Investigator;         *
Candace Palmer, Medical Director of        *
Nurses JCCC; Charles Turner; Robert        *
Campbell;Tanya Kempker; Fred               *
Johnson; Stan Jackson; Augustus            *
Hannel; Bryan Goeke; Charles Dwyer;        *
Richard Corser; Garry Branch; Charles      *

Baker; Tom King; Mr. Mayberry;            *
William Kitchell; John Appelberry;        *
Sanders; William P. Nickelson; Kim        *
Wates; Steven Long; Sharon Gifford;       *
Michael J. Layden; Steven Gifford;        *
Linda Wilkson; Melody Haney; Don          *
Roper; Ian Wallace; Correctional          *
Medical Services, Inc.; Tim Watson;       *
Allen Courville,                          *
                                          *
                    Appellees.            *

_____

Submitted:  January 12, 2006
Filed:  July 5, 2006

_____

Before WOLLMAN, LAY, and ARNOLD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Timothy Johnson appeals the district court's[1] grant of summary judgment in favor of several current and former employees of the Missouri Department of Corrections, Correctional Medical Services, Inc. (Correctional Medical), Dr. Jacque Lamour, Sarah (Jane) Doe, and Candace Palmer. We affirm.

**I.**

Johnson is an inmate in the Missouri Department of Corrections. On May 2, 2000, while being held at the Jefferson City Correctional Center, he was involved in a physical confrontation with David Webster and Stanley Swicord, who at that time

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

-2-

were employed by the Missouri Department of Corrections as, respectively, a caseworker and a classification assistant. Earlier that morning, Webster had observed Johnson wearing a hoop earring, which was prohibited in that institution. Webster confiscated the hoop earring and told Johnson that he would be issued a conduct violation. A short time later, Webster escorted Johnson to Swicord's office to be interviewed about the conduct violation. At the conclusion of the interview, Johnson began to leave the office, whereupon Webster noticed what appeared to be a prohibited diamond earring in Johnson's ear. Webster ordered Johnson to stop and to return to the office, and Johnson did so.

The individual accounts of the events which followed are inconsistent. Johnson testified that Webster grabbed his hair, twisted his head, and attempted to pull the earring from his ear. According to Johnson's account, he pushed Webster away and that when Webster again approached him, Johnson struck Webster, sending him down to one knee. Swicord then attempted to intervene by throwing a metal paper holder at Johnson. The paper holder missed Johnson, and Swicord moved to physically restrain him.

According to Johnson's testimony, Webster struck him with "a couple" of glancing blows while he was being restrained by Swicord. Johnson and Swicord then fell, with Swicord pinning Johnson to the floor. Johnson claims that while he was restrained on the floor, Webster stomped and kicked his hand and wrist. Johnson testified that he then "sort of bench pressed" Swicord off him, got to his feet, and struck Swicord and Webster several times until they were both beaten into submission.

Both Swicord and Webster received serious injuries in this altercation. Webster now suffers from short-term memory loss, a permanent 25% disability in his left shoulder, and headaches. Swicord suffered a triple fracture in his face and a collapsed sinus wall, and he continues to suffer from headaches and sinus problems.

Following the altercation, Johnson was removed to administrative segregation, where he was examined by Nurse Martha Hamilton. Hamilton treated Johnson for skin abrasions and provided him with antibiotic ointment to treat the injury. On May 8, 2000, Johnson submitted his first medical request, complaining of pain in his right hand and neck and requesting x-rays of those areas. On May 17, 2000, Johnson was examined by Nurse Susie Akers, who treated him with ibuprofen and referred him to a doctor. Johnson testified that Akers told him that, based on the length of time that it had been swollen, he likely had a fracture in his finger. Johnson submitted another medical request on June 18, 2000, and he was seen that same day by Dr. Jacques Lamour, who ordered an x-ray of Johnson's hand, prescribed additional pain medication for him, and instructed Johnson to return in two weeks for a follow up. A July 3, 2000, x-ray of Johnson's right hand revealed a fracture in one of the fingers. Dr. Lamour then referred Johnson to an orthopedic surgeon, from whom Johnson received specialized treatment for the fracture until November 2000.

Johnson was criminally prosecuted for his role in the physical confrontation and was found guilty of offering violence to an officer of the Missouri Department of Corrections. Johnson also received a conduct violation and was placed in administrative segregation as a result of the incident. He subsequently filed an action pursuant to 18 U.S.C. § 1983 in the district court, alleging several violations of his Eighth and Fourteenth Amendment rights. First, he alleged that Webster and Swicord used excessive force during the physical confrontation. Second, he alleged that Correctional Medical and several of its employees were negligent in caring for his injury and that they had acted with deliberate indifference to his serious medical needs. Third, he alleged that he was subjected to cruel and unusual punishment because he was forced to share a cell in administrative segregation. Fourth, he alleged several violations of his due process rights related to decisions to confine him to administrative segregation and an alleged deprivation of access to legal papers, materials, and counsel. The district court granted summary judgment in favor of all of the defendants on the federal constitutional claims and dismissed without prejudice

the state law negligence claims.  On appeal, Johnson argues that the district court erred in granting summary judgment on his various federal claims.

## II.

We review *de novo* a district court's grant of summary judgment.  Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005). Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Aviation Charter, 416 F.3d at 868.  We view the evidence and the inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party. Id.  A party opposing summary judgment is not permitted to merely rest on his pleadings but must instead set forth sufficient evidence from which a reasonable jury could find in his favor on all elements of his claims.   See Thompson v. Hubbard, 257 F.3d 896, 898-99 (8th Cir. 2001); Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

The Eighth Amendment protects inmates from unnecessary and wanton infliction of pain by correctional officers.  Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002).  Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously and sadistically to cause harm.  Id.  In deciding whether a particular use of force was reasonable, we consider whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries.  Id.  For example, we have held that employment of a stun gun to subdue a prisoner who had verbally threatened and then lunged at a prison official did not constitute the use of excessive force.  Jasper v. Thalacker, 999 F.2d 353 (8th Cir. 1993).

-5-

Although Johnson's account of the altercation differed from the testimony offered by Webster and Swicord, there are a number of facts that are not disputed. First, it is clear that Johnson escalated the confrontation by pushing and then punching Webster in response to Webster's attempts to restrain him and to examine his earring. Second, even after he had been to a degree restrained by Swicord, Johnson continued to assault the two men, inflicting serious injuries upon them. Third, the injuries suffered by Webster and Swicord were beyond all measure much more serious than the injuries Johnson received. Fourth, Johnson was criminally prosecuted and convicted as a result of his actions in this incident.

In light of these undisputed facts, we conclude that no reasonable jury could find that Webster and Swicord used excessive force in violation of the Eighth Amendment. Webster and Swicord reasonably perceived that Johnson was still a threat even while he was being partially restrained. The reasonableness of this perception was confirmed when Johnson physically overcame those restraints by pushing Swicord away, rising from the floor, and striking several blows that resulted in permanent injuries to Webster and Swicord. This evidence, viewed in the light most favorable to Johnson, reveals a use of force by Webster and Swicord that was commensurate with the situation with which they were confronted and which was employed in a good faith effort to maintain or restore discipline. Accordingly, the district court did not err in granting summary judgment in favor of the two men on the excessive force claim.

To support his section 1983 claim against the medical personnel, Johnson must show that they were deliberately indifferent to his serious medical needs. Camberos v. Branstad, 73 F.3d 174, 175 (8th Cir. 1995). To show deliberate indifference, Johnson must demonstrate that he suffered objectively serious medical needs, and the officials actually knew of but deliberately disregarded those needs. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To support a claim against Correctional Medical under section 1983, Johnson must show that there was a policy,

custom, or official action that inflicted an actionable injury. Sanders v. Sears Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993).

Johnson has presented evidence of an objectively serious medical need that officials knew of, but there is no evidence that the medical personnel deliberately disregarded those needs. It is true that there was delay of a month between Nurse Akers' tentative diagnosis that Johnson's finger was fractured and the date Johnson's hand was x-rayed. Johnson has presented no evidence, however, that this delay was the result of anything other than negligence. Mere negligence does not rise to a constitutional violation. Dulany, 132 F.3d at 1239. Moreover, Johnson has not pointed to any policy, custom, or official action by Correctional Medical that resulted in this delay. As a result, summary judgment in favor of Correctional Medical and the medical personnel was warranted in this case.

To sustain an Eighth Amendment claim based on the failure to protect him from other inmates, Johnson must show that he was incarcerated under conditions posing a substantial risk of serious harm and that the prison officials actually knew of and disregarded the risk to Johnson's health and safety. Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996). Johnson alleges that he was forced to share a cell in administrative segregation with another inmate and that there have been a greater number of violent incidents in two-man cells in segregation than there have been in the general prison population. Johnson has not, however, presented any evidence demonstrating that he was actually in any personal danger or that any prison official acted in bad faith in placing him in a double cell. Accordingly, his Eighth Amendment failure-to-protect claim cannot survive summary judgment.

To sustain his due process claim regarding the proceedings which resulted in his being placed in administrative segregation, Johnson must demonstrate that the conditions imposed on him constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. Phillips v. Norris, 320 F.3d 844, 847 (8th Cir.

2003). A demotion to segregation, even without cause, is not itself an atypical and significant hardship unless Johnson points to some specific difference between his conditions in segregation and the conditions in the general population which amounts to such a hardship. Id. Johnson has not offered evidence of any such differences, so summary judgment was proper on these claims.

Johnson also claims that prison officials impermissibly retaliated against him for exercising his legal rights by issuing him conduct violations. Johnson, however, carries a substantial burden to prove that retaliation was the actual motivating factor for his transfer. Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1994). If the discipline which a prisoner claims is retaliatory was in fact imposed for an actual violation of prison rules or regulations, the prisoner's claim must fail. Id. Johnson was given a disciplinary hearing for each conduct violation. Evidence was presented in support of those violations, and Johnson has not come forward with any evidence that the prison officials were motivated solely by an intent to retaliate against him.

To sustain his claim based on denial of access to legal materials, counsel, or the courts, Johnson must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access. Klinger v. Department of Corrections, 107 F.3d 609, 616-17 (8th Cir. 1997). Johnson's conclusory claims that he was denied access to legal papers and the courts must fail because Johnson has not presented any evidence or even pleaded any facts that would support a finding of injury or prejudice. Finally, his claims that legal papers were seized and destroyed must fail because he has not presented any evidence outside of his pleadings.

The judgment is affirmed.

LAY, Circuit Judge, concurring.

I agree with the majority that Johnson has failed to show that any one individual, or group of individuals, involved in this appeal acted with deliberate indifference to Johnson's serious medical needs. However, I write separately to voice my belief that our decision today should not preclude the possibility that a one-month delay between diagnosis and treatment could generate a factual question on this issue.

It is well-settled that Eighth Amendment deliberate indifference may be demonstrated where prison medical personnel know of an inmate's serious medical need yet fail to respond to it. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). The factual determination that a prison official had the requisite knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the medical need was obvious. Coleman v. Rahija, 114 F.3d 778, 786 (8th Cir. 1997).

In this case, Nurse Sue Akers told Johnson on May 18, 2000 that he had probably sustained a broken or fractured hand. The record therefore supports the conclusion that Akers had knowledge of Johnson's serious medical need. Although Akers promised Johnson that she would refer him to a doctor, Johnson's condition was left untreated until his hand was finally examined by a doctor on June 18 – one full month after Akers' initial diagnosis. Subsequent x-rays revealed that Johnson's hand was fractured. This delay, coupled with the fact that Johnson fractured his hand during a fight with prison guards, provides enough evidence from which a reasonable jury could infer that Akers failed to take appropriate action to treat Johnson's hand in retaliation for his earlier altercation with prison officials.

This theory, however, cannot support reversal in this instance because Johnson's claim against Akers was dismissed by the district court under Fed. R. Civ.

P. 4(m).  Therefore, without a live claim against Akers before us, Johnson's argument must fail.

_____