# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2415

_____

Michael Buetow, et al., individually and   *
on behalf of all other Minnesota   *
residents and entities similarly situated,   *
  *
     Plaintiffs - Appellees,   *
  *   Appeal from the United States
   v.   *   District Court for the
  *   District of Minnesota.
A.L.S. Enterprises, Inc.; Cabela's, Inc.;   *
Cabela's Wholesale, Inc.; Gander   *
Mountain Company,   *
  *
     Defendants - Appellants.   *

_____

Submitted:  February 17, 2011
Filed: August 18, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

There is a substantial market for products that will prevent game animals, with their keen sense of smell, from detecting the presence of hunters.  Activated carbon, when embedded in clothing, adsorbs[1] and retains human scent.  In 1992, A.L.S.

_____

[1]Adsorption is a process in which gas particles physically adhere to the surface of the adsorbent (the "bulk material").  It differs from absorption, in which particles permeate the bulk material and are incorporated into its volume.

Enterprises began manufacturing and selling hunting garments incorporating activated carbon by a patented process that A.L.S. advertised under the brand name "Scent-Lok®" as "odor eliminating technology." Fifteen years later, five hunters commenced this purported class action against A.L.S. and three of its licensees who sell odor adsorbing clothing under various brand names in Cabela's and Gander Mountain retail stores and mail order catalogs. Plaintiffs' Second Amended Class Action Complaint alleged that A.L.S. "has uniformly misrepresented to consumers that its odor eliminating clothing would not only eliminate 100% of human odors, but could also be reactivated or regenerated in a household dryer after the clothing has become saturated with odors," thereby violating three Minnesota consumer protection statutes, the Minnesota Consumer Fraud Act (MCFA), Minn. Stat. § 325F.69, subd. 1; the Minnesota Unlawful Trade Practices Act (MUTPA), Minn. Stat. § 325D.13; and the Minnesota Uniform Deceptive Trade Practices Act (MDTPA), Minn. Stat. § 325D.44, subd. 1.

After the district court denied Plaintiffs' motion for class certification because reliance and damages issues lack the commonality required by Federal Rule of Civil Procedure 23(b)(3), Plaintiffs filed a motion for partial summary judgment, seeking to permanently enjoin Defendants' advertisements because they are literally false.[2] Defendants filed cross motions for summary judgment dismissing all claims. In the core ruling at issue on appeal, the court held that all advertisements claiming that Defendants' garments are "odor eliminating," without a qualification that the clothing can only reduce odor, are literally false as a matter of law and that proof of literal falsity entitles Plaintiffs to a permanent injunction under the MCFA and the MUTPA without proof of the other elements of a federal false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). The court further ruled that ads claiming that

_____

[2]Federal jurisdiction in this case is based upon the Class Action Fairness Act, 28 U.S.C. § 1332(d). That jurisdiction continued despite the district court's denial of Plaintiffs' motion for class certification. Cunningham Charter Corp. v. Learjet, Inc., 592 F.3d 805, 806 (7th Cir. 2010).

clothing that contains activated carbon can be "reactivated" are not literally false, but it permanently enjoined as literally false ads claiming that reactivation will make the clothing "like new" or "pristine." Finally, the court ruled that the sole remedy under the MDTPA is prospective injunctive relief and granted Defendants summary judgment dismissing those claims because Plaintiffs presented no evidence they are exposed to a risk of future harm. (Plaintiffs do not cross appeal that ruling.) <u>Buetow v. A.L.S. Enters., Inc.</u>, 713 F. Supp. 2d 832 (D. Minn. 2010).

Defendants appeal the grant of a permanent injunction, arguing the district court erred in its literal falsity determinations and in granting an injunction based solely on those determinations. Although other claims remain pending, we have jurisdiction to review an interlocutory order granting an injunction. <u>See</u> 28 U.S.C. § 1292(a)(1). Agreeing with Defendants that the permanent injunction was based upon those errors of law, we vacate the injunction and remand.

## I. The Governing Law Error

**A. The Error.** Plaintiffs led the district court into error by arguing, as they do on appeal, (i) that the Minnesota statutes in question are coextensive with the federal false advertising standards under the Lanham Act, and (ii) that Lanham Act cases establish the proposition that, "When an advertisement is literally false, the Court need not consider the remaining Lanham Act elements in order to grant Plaintiffs injunctive relief." <u>Buetow</u>, 713 F. Supp. 2d at 838 (quotation omitted).

The first legal error is that the proposition is a misstatement of *federal* law. To establish a Lanham Act false advertising claim, a plaintiff must prove "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to

enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998).

Though the proposition has been repeated in numerous District of Minnesota opinions, it is not correct. Rather, it is a careless expansion of a sound principle adopted many years ago by the Second Circuit -- when a competitor's advertisement, particularly a comparative ad, is proved to be literally false, the court may presume that consumers were misled and grant an irreparably injured competitor injunctive relief without requiring consumer surveys or other evidence of the ad's impact on the buying public. See Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994); Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d Cir. 1982), and cases cited. We endorsed this principle in United Industries, 140 F.3d at 1180. But even when the principle applies in a Lanham Act dispute between competitors, the plaintiff "must show that it will suffer irreparable harm absent the injunction." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991); accord Porous Media Corp. v. Pall Corp., 110 F.3d 1329, 1334-35 (8th Cir. 1997). Plaintiffs and the district court, like prior District of Minnesota opinions, ignored this qualifier, which is an essential and universal predicate to the grant of equitable relief. The result was what Judge Posner has characterized as "an unfortunately common example of a litigant misled by general language in judicial opinions." Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc., 586 F.3d 500, 512 (7th Cir. 2009).[3] The district

_____

[3]Some courts have been willing to presume that a literally false *comparative* ad irreparably injured the compared competitor because "[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." McNeilab, Inc. v. Am. Home Prods. Corp., 848 F.2d 34, 38 (2d Cir. 1988); accord N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227 (11th Cir. 2008). We do not disagree with those decisions.

court erred in granting Plantiffs a permanent injunction without proof of irreparable injury.

The second error was in equating the standards for relief under the Lanham Act and the Minnesota consumer protection statutes at issue. Plaintiffs are retail purchasers seeking relief under those statutes. Lanham Act false advertising cases invariably involve claims asserted by "competitors of the wrongdoer" or by plaintiffs protecting other *commercial* interests. See Am. Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103-04 (8th Cir. 2006). When a commercial plaintiff asserted pendent state law claims under these Minnesota statutes in a Lanham Act trademark dispute, we noted that the pendent claims "are coextensive with the federal claims." DaimlerChrysler AG v. Bloom, 315 F.3d 932, 935 n.3 (8th Cir. 2003). But here Plaintiffs are consumers, and only state law claims are asserted. Automatically equating the standards of these state statutory claims to the standards that apply to Lanham Act cases between commercial parties is wrong. When the plaintiffs are consumers who have proved no future harm, as in this case, it is an error of law to *assume* that a false statement materially deceived and injured the plaintiffs.

Plaintiffs seek a permanent injunction for alleged violations of two Minnesota statutes. Accordingly, the proper starting point is to determine the statutory standards for obtaining that relief. In general, under Minnesota law, "where injunctive relief is explicitly authorized by statute . . . proper exercise of discretion requires the issuance of an injunction if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purposes behind the statute's enactment." Wadena Implement Co. v. Deere & Co., Inc., 480 N.W.2d 383, 389 (Minn. App. 1992). So we must take a close look at the statutes in question. Once the statutory standards are established, Lanham Act decisions provide useful guidance in determining the proof required to establish consumer confusion under the MCFA and the MUTPA. Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2, 15 n.11 (Minn. 2001).

**B. The MCFA Claims.** The MCFA expressly authorizes injunctive relief in certain circumstances:

> The . . . use . . . of any fraud, . . . misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. Stat. § 325F.69, subd. 1. Relying on dicta in <u>LeSage v. Nw. Bank Calhoun-Isles, N.A.</u>, 409 N.W.2d 536, 539 (Minn. App. 1987), Plaintiffs argue this statute authorizes an injunction in an action by private plaintiffs without a showing of irreparable injury or any injury whatsoever. However, a 2004 amendment adding the cross reference to § 325F.70[4] made it clear that the statute's broad remedial authority was granted only in actions brought by the Minnesota Attorney General:

> The attorney general . . . may institute a civil action in the name of the state . . . for an injunction prohibiting any violation of [the MCFA]. The court, upon proper proof that defendant has engaged in a practice made enjoinable by section 325F.69, may enjoin the future commission of such practice. It shall be no defense to such an action that the state may have adequate remedies at law.

Minn. Stat. § 325F.70, subd. 1; <u>see</u> <u>Ensminger v. Timberland Mortg. Servs., Inc.</u>, 2010 WL 1541360, at *4 (Minn. App. Apr. 20, 2010) (unpublished). Plaintiffs argue that <u>State ex rel. Hatch v. Cross Country Bank, Inc.</u>, 703 N.W.2d 562, 572-74 (Minn. App. 2005), established that private plaintiffs may be granted an injunction under the MCFA without proof of irreparable injury. We disagree. That was a civil enforcement action brought by the Attorney General.

---

[4]<u>See</u> Minn. Laws. 2004, ch. 228, art. 1, §§ 56, 57.

Private plaintiffs seeking remedies for violation of Minnesota consumer protection statutes do have a remedy, an action under Minn. Stat. § 8.31, subd. 3a:

> [A]ny person injured by a violation of [the laws against false or fraudulent advertising, or the unlawful trade practices act] may bring a civil action and recover damages, together with costs and disbursements, including . . . reasonable attorney's fees, and receive other equitable relief as determined by the court.

The "substantive statutes define the prohibited conduct," but "it is Minn. Stat. § 8.31, subd. 3a, that authorizes private actions for violation of these . . . statutes." Group Health, 621 N.W.2d at 5, 8. As the text of § 8.31, subd. 3a makes clear, this statutory cause of action is limited to persons "injured *by* a violation." Id. at 13; Schaaf v. Residential Funding Corp., 517 F.3d 544, 550 (8th Cir. 2008). Moreover, the grant of authority to "receive other equitable relief as determined by the court" is plainly limited to relief that is consistent with principles of equitable remedies, which universally require proof of irreparable injury. Thus, when Group Health returned to federal court after the Supreme Court of Minnesota answered certified questions, we construed the state Court's decision as requiring a private plaintiff seeking injunctive relief for violations of these consumer protection statutes to prove harm or injury-in-fact. Group Health Plan, Inc. v. Philip Morris USA, Inc., 344 F.3d 753, 763 (8th Cir. 2003), and 766 (Hansen, J., dissenting).

**C. The MUTPA Claims.** The MUTPA prohibits sellers from "knowingly misrepresent[ing] . . . the true quality . . . of . . . merchandise." Minn. Stat. § 325D.13. Unlike the MCFA, this statute grants a private right of action to enjoin violations:

> Any person damaged or who is threatened with loss, damage, or injury by reason of a violation of sections 325D.09 to 325D.16 shall be entitled to sue for and have injunctive relief . . . against any damage or threatened loss or injury by reason of a violation . . . . [I]t shall not be

necessary to allege or prove that an adequate remedy at law does not exist.

Minn. Stat. § 325D.15. But this statute requires private plaintiffs to prove they have been "damaged or . . . threatened with loss, damage, or injury by reason of a violation" to be entitled to injunctive relief. Plaintiffs failed to prove the threat of future injury; we doubt that § 325D.15 authorizes an injunction to "remedy" only past violations. See Wilson v. Polaris Indus., Inc., 1998 WL 779033, at *3 (Minn. App. Nov. 10, 1998) (unpublished).

As Plaintiffs failed to prove, indeed, claimed that they need not prove the irreparable injury that is essential to a claim for a preliminary or permanent injunction under these Minnesota statutes, we vacate the district court's injunction.

## II. A Judicial Fact-Finding Error

Under the Lanham Act, a plaintiff can prove that advertising is false by showing either that it contains a statement that is "literally false," or a statement that, while literally true, implicitly conveys a false message, is misleading, or is likely to deceive consumers. United Indus., 140 F.3d at 1180. The standard for proving literal falsity is rigorous. "[O]nly an *unambiguous* message can be literally false." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 158 (2d Cir. 2007) (emphasis in original; quotation omitted). When an ad "can reasonably be understood as conveying different messages, [a] literal falsity argument must fail." Scotts Co. v. United Ind. Corp., 315 F.3d 264, 275 (4th Cir. 2002). "In assessing whether an advertisement is literally false, a court must analyze the message conveyed within its full context." United Indus., 140 F.3d at 1180, citing Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 516 (8th Cir. 1996). Though literal falsity may be conveyed by necessary implication, "when a Court considers whether a message is necessarily implied from the product's name and advertising, it must determine whether the false

message will necessarily and unavoidably be received by the consumer." <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.</u>, 290 F.3d 578, 588 (3d Cir. 2002). We of course review a district court's grant of summary judgment on this issue *de novo*, reversing if we perceive there are genuine issues of material fact. <u>Aviation Charter, Inc. v. Aviation Research Group/US</u>, 416 F.3d 864, 868 (8th Cir. 2005).[5]

In this case, the summary judgment record is crowded with various ads published by Defendants between 1994 and late 2006 containing a variety of claims that the carbon activated garments "eliminate" odor and can be "reactivated" in an ordinary household dryer. Both sides retained experts who conducted tests of the clothing's odor-adsorbing capabilities. Defendants' expert, Dr. Hartman, conducted quantitative permeation testing and estimated that Defendants' products "blocked" ninety-six to ninety-nine percent of odor compounds, whereas noncarbon garments blocked only five to fifty-five percent. But Dr. Hartman admitted that Defendants' garments did not eliminate all odor. Plaintiffs' expert, Dr. Miller, described how his tests showed that odor passed through Defendants' garments in as little as thirty seconds but admitted his tests did not measure the extent or concentration of odor permeation. Defendants introduced evidence of substantial customer satisfaction with ALS's Scent-Lok® products, as well as evidence that, when those products first came on the market in the early 1990's, numerous soaps, powders, and cover sprays were being marketed to deer hunters as "odor eliminating" products.

---

[5]There is some disagreement whether literal falsity is a question of fact or a question of law for the court. <u>Compare</u> <u>N. Am. Med. Corp.</u>, 522 F.3d at 1225 n.12, <u>and</u> <u>United Indus.</u>, 140 F.3d at 1182, <u>with</u> <u>Allsup, Inc. v. Advantage 2000 Consultants Inc.</u>, 428 F.3d 1135, 1138 (8th Cir. 2005). The issue is perplexing because consumer confusion is a fact intensive issue, but whether a contract or statute is unambiguous is normally a question of law for the court. The issue is not significant to this appeal, so we put it aside.

The district court took a simple approach in determining that all ads claiming that Defendants' garments "eliminate odor" or use "odor eliminating technology" were literally false. Citing two dictionary definitions of the word "eliminate," the court concluded that "[t]he word 'eliminate' is subject to only one reasonable interpretation -- complete elimination." The court rejected Defendants' reliance on dictionary definitions equating "eliminate" with "remove" because "use of the word 'remove' would also be literally false if used in Defendants' advertisements." The court disregarded the fact that other hunting products used the word "eliminate" because "such advertisements may also be literally false." 713 F. Supp. 2d at 839, 840, & n.10. Because even Defendants' expert conceded that their garments were incapable of adsorbing every single molecule of odor, the court permanently enjoined all use of the term "eliminate" as literally false.

We disagree with the district court's decision to base its determination of literal falsity on the most absolute of competing dictionary definitions of the word "eliminate." The Lanham Act doctrine of literal falsity is reserved for an ad that is unambiguously false *and* misleading -- "the patently false statement that means what it says to any linguistically competent person." Schering-Plough, 586 F.3d at 513. We doubt there are many hunters so scientifically unsophisticated as to believe that any product can "eliminate" every molecule of human odor. As Judge Henry Friendly explained in reversing a district court's literal falsity finding and directing dismissal of the competitor's Lanham Act false advertising complaint, a district court errs when it ignores "the principle that text must yield to context" and "make[s] a fortress out of the dictionary." Avis Rent A Car Sys., Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986). Here, we conclude it was error to enjoin all uses of the term "odor eliminating" as literally false. It may be that some of Defendants' ads over the course of this twelve-year period so exaggerated the basic claim as to be literally false, rather than nonactionable "puffery," such as claims that the garments work on "100% of your scent 100% of the time," render the wearer "completely scent-free," or "create an impervious shield to odor." But it is unclear the extent to which these ads were

ever published, whether they have long since been discontinued, and whether consumers were deceived.

### III. What Next?

In response to Plaintiffs' motion for partial summary judgment for a permanent injunction based upon literal falsity without proof of injury, Defendants objected to Plaintiffs seeking summary judgment on only the falsity element of their overall claims. Plaintiffs replied that they "have moved for a complete summary adjudication of their claims seeking injunctive relief." We will hold them to that representation. Plaintiffs failed to prove both the requisite irreparable injury and their core allegations that Defendants' use of the terms "odor eliminating" and "reactivation" were literally false. As in Avis, 782 F.2d at 386, we direct the district court to enter an order dismissing with prejudice all claims for equitable relief.

On the other hand, Plaintiffs' individual claims for damages cannot be resolved on this summary judgment record. Accordingly, we remand for a determination of those claims applying the standards prescribed by the Supreme Court of Minnesota in Wiegand v. Walser Auto. Groups, Inc., 683 N.W.2d 807, 811-13 (Minn. 2004); Group Health, 621 N.W.2d at 13-15; and Ly v. Nystrom, 615 N.W.2d 302, 313-14 (Minn. 2000).

The district court's Memorandum Opinion and Order dated May 13, 2010 is reversed, the Injunction dated June 17, 2010 is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

I am pleased to concur in section I of the majority opinion. However, I respectfully dissent from sections II and III.

I do not believe that the trial judge, who wrote a very thorough opinion in this case, committed any judicial fact finding errors when he concluded that the terms "odor eliminating" and "reactivation" are literally false.

I agree with the majority that the message conveyed must be analyzed within its full context and that the Lanham Act proscribes only messages that are *both* false *and* misleading. However, in finding that the "odor eliminating" and "reactivation" claims are not literally false because not many hunters would be "so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of human odor," the majority's opinion substitutes this court's judgment for the evidence in the record (*i.e.*, the statements in the Plaintiffs' affidavits) that the Plaintiffs themselves *were* misled. It is true that only a very credulous consumer would believe such a claim, but the claim itself is, in fact, false. It is unwise to decide that just because the judges on the panel would not be deceived, it is therefore impossible that any reasonable consumer would be deceived. This is especially the case because the claims are scientific. I fear that the majority opinion sets up a slippery slope for future false advertising claims brought by consumers, especially as consumer products become ever more hi-tech and complex.

The majority essentially finds that "odor eliminating" and "reactivation" are nonactionable puffery, but allows that some other claims—such as works on "100% of your scent 100% of the time," renders the wearer "completely scent-free," and "create[s] an impervious shield to odor"—might go beyond puffery.

The majority's conclusion that the "odor eliminating" and "reactivation" claims are merely "puffery" does not square with this court's definition of puffery:

> Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of

-12-

superiority. Juxtaposed to puffery is a factual claim. A factual claim is a statement that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification. To be actionable, the statement must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact. . . . *Puffery and statements of fact are mutually exclusive. If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, i.e., one capable of verification, the statement is one of fact.* Conversely, if the statement is not specific and measurable, and cannot be reasonably interpreted as providing a benchmark by which the veracity of the statement can be ascertained, the statement constitutes puffery. Defining puffery broadly provides advertisers and manufacturers considerable leeway to craft their statements, allowing the free market to hold advertisers and manufacturers accountable for their statements, ensuring vigorous competition, and protecting legitimate commercial speech.

Am. Italian Pasta Co. v. New World Pasta Co., 371 F.3d 387, 390–91 (8th Cir. 2004) (emphasis added) (internal quotation marks and citations omitted). It seems to me that the "odor eliminating" claim is "a specific, measurable claim . . . capable of verification." Therefore, it is a statement of fact, and, consequently, not puffery.

Finally, I question the need to reach the issues addressed in section II and referenced in section III. Having found in section I that the entry of an injunction in this case was error, I believe we should do no more than remand for further proceedings.

_____